UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
LI RONG GAO, XIAO HONG ZHENG, individually
and on behalf of all others similarly situated,

                              Plaintiffs,

          -against-

PERFECT TEAM CORPORATION, d/b/a Guang
Zhou Restaurant; JI SHIANG, INC., d/b/a Guang
Zhou Restaurant; FENG LIN; CHUN KIT CHENG,
a/k/a Jun Jie Zheng; JIA LI WANG; ZHUO PING
CHEN

                              Defendants.
-----------------------------------------------------------------x

**MEMORANDUM & ORDER**

10-cv-1637 (ENV) (CLP)

**VITALIANO, D.J.**

On April 13, 2010, plaintiffs Li Rong Gao and Xiao Hong Zheng, individually and on behalf of all others similarly situated, brought this action against Perfect Team Corporation, d/b/a Guang Zhou Restaurant; Ji Shiang, Inc., d/b/a Guang Zhou Restaurant; Feng Lin;[1] Chun Kit Cheng, a/k/a Jun Jie Zheng; Jia Li Wang; and Zhuo Ping Chen, seeking damages and injunctive relief for violations of New York Labor Law and the federal Fair Labor Standards Act ("FLSA") arising out of their employment at Guang Zhou Restaurant. Plaintiffs now move, pursuant to

---

[1] On July 21, 2011, defendant Lin filed for Chapter 7 protection in the Bankruptcy Court for the Eastern District of New York. As applied to this action, the scope of the automatic stay, *see* 11 U.S.C. § 362(a), remains somewhat unclear, such that at this moment it is not evident against which defendants plaintiffs may continue to press their claims while the bankruptcy stay is in effect. The parties apparently agree, not only that no relief is available during the pendency of the automatic stay against the debtor, but also that the automatic stay does not bar consideration of the claims against the other individual defendants. However, given the manner of litigation—the identity of facts and issues—any adverse determination against the other individual defendants could still have preclusive effect on parties protected by the stay. In any event, the practical effect of the ruling on plaintiff's motion is identical to that of a stay of all proceedings, insofar as the status quo will be undisturbed.

1

Federal Rule of Civil Procedure 64, for an order of attachment against several properties owned by defendants and others, in an amount not to exceed $514,888. For the reasons below, the motion is denied.

## Background

Plaintiffs are former and current non-managerial employees of Guang Zhou Restaurant ("the restaurant"), located in Flushing, Queens.[2] According to plaintiffs, defendant Perfect Team operated the restaurant until approximately June 2009, after which time it was operated by defendant Ji Shiang, Inc. Plaintiffs claim that defendant Cheng is the President of Perfect Team Corp. and was a manager at the restaurant; that defendant Lin is the principal shareholder of Ji Shiang; and that Cheng's wife, defendant Jia Li Wang, and defendant Chen were or are managers at the restaurant. At some or all times relevant to this action, according to plaintiffs, all of these individuals had the power to hire and fire restaurant employees and to control the terms and conditions of their employment, including determining the rate and method of compensation.

The gravamen of plaintiffs' complaint is that defendants failed to pay plaintiffs and other non-managerial employees minimum wage, overtime payments, or spread-of-hours premiums; illegally withheld their tips; and retaliated against plaintiffs Gao and Zheng for complaining about the restaurant's payment practices by terminating Gao and Zheng's employment. Flowing from these allegations, plaintiffs assert collective action claims under the FLSA for the failure to pay minimum wage and overtime payments, as well as individual claims under the New York Labor Law for the failure to pay minimum wage, overtime payments, and spread of hours pay; the

---

[2] On August 25, 2010, the complaint was amended to include plaintiffs Shu F. Jiang, Wei S. Tan and Wei J. Wu.

2

unlawful retention of gratuities; and retaliation.[3]

On February 3, 2011, plaintiffs filed an ex parte motion, pursuant to Federal Rule of Civil Procedure 64, seeking pre-judgment attachment of the restaurant; Ji Shiang, Inc.; Perfect Team Corp.; 64-56 Cloverdale Boulevard, Oakland Gardens, New York, 11364, a residence owned by defendants Cheng and Wang; 240-58 68th Avenue, #55, Douglaston, New York, 11362, a residence now owned by defendant Lin's ex-wife, third-party Jia Ni Wang; and the ownership interests of defendants Cheng, Wang, and Lin in Bai Lao Hui Shabu Shabu, a restaurant located at 142-38 Roosevelt Avenue, Flushing, New York, 11354. On February 4th, the Court scheduled a hearing for defendants to show cause why these assets should not be attached, but declined to issue the temporary restraining order that plaintiffs requested enjoining defendants from selling, transferring, or encumbering any of these assets pending the hearing. Following the hearing, the Court reserved decision on the application for attachment and granted leave to submit supplemental briefing. Defendants' counsel represented that their clients had agreed not to transfer any of their interests in the restaurant, or in any of the entities that operate it, pending the Court's ruling on this motion, effectively consenting to a portion of the relief sought in the request for a temporary restraining order.

In their supplemental memorandum of law, plaintiffs have modified their attachment request. They now seek attachment of the 64-56 Cloverdale Boulevard property in the full amount of $514,888.22 and request that, if the Court does not order the attachment of this property or if the property does not have sufficient value, the Court order the attachment of the remaining amount against one or more of the restaurant, Perfect Team's and/or Ji Shiang's assets, the 68th

---

[3] Plaintiff Jiang, like plaintiffs Gao and Zheng, brings suit individually and on behalf of all others similarly situated. Plaintiffs Tan and Wu bring suit in their individual capacity only.

3

Avenue property, or defendants' ownership interests in Jili, Inc. Plaintiffs also seek an accounting of Perfect Team and Ji Shiang to identify any other assets that can be attached.

## Discussion

Federal Rule of Civil Procedure 64 permits federal litigants to seek an order of attachment in the manner provided by the law of the state in which the district court sits. *See* Fed. R. Civ. P. 64 ("[T]hroughout an action, every remedy is available that, under the law of the state where the court is located provides for seizing a person or property to secure satisfaction of the potential judgment," including attachment.) Under New York law, a plaintiff may obtain an order of attachment if it demonstrates that (1) it has stated a claim for a money judgment; (2) it has a probability of success on the merits; (3) the defendant, "with the intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered, or secreted property, or removed it from the state or is about to do any of these acts," and (4) the amount demanded from the defendant is greater than the amount of all counterclaims known to plaintiff. N.Y. C.P.L.R. §§ 6212(a), 6201(3).

Because attachment is a harsh remedy, these statutory factors are construed strictly in favor of the party against which attachment is sought. *See DLJ Mortgage Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 319 (E.D.N.Y. 2008); *see also Brastex Corp. v. Allen Int'l, Inc.*, 702 F.2d 326, 332 (2d Cir. 1983). By consequence, under the third element, fraud is not lightly inferred. Rather, the moving papers must contain evidentiary facts indicating the existence of fraud, not simply conclusory statements, and it "must appear that . . . fraudulent intent really exists in the defendant's mind." *Encore Credit Corp. v. LaMattina*, No. 05-CV-5442, 2006 WL 148909, at *3 (E.D.N.Y. Jan. 18, 2006). Nonetheless, because "fraudulent intent is rarely susceptible to direct proof," *In re Kaiser*, 722 F.2d 1574, 1582 (2d Cir. 1983), courts have looked to whether allegedly

4

suspicious transactions exhibit "badges of fraud" that give rise to a sufficient inference of intent, *see, e.g., N.Y. Dist. Council of Carpenters Pension Fund v. KW Constr., Inc.*, No. 07-CV-8008, 2008 WL 2115225, at *4-*5 (S.D.N.Y. May 16, 2008). When reviewing a suspect transaction, among the badges considered are (1) gross inadequacy of consideration; (2) a close relationship between transferor and transferee; (3) the transferor's insolvency as a result of the conveyance; (4) a questionable transfer not in the ordinary course of business; (5) secrecy in the transfer; and (6) retention of control of the property by the transferor after the conveyance. *Id.* Other indicia of fraud may include "the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors" and the transfer of assets in close proximity to events in litigation. *Id.*

Here, plaintiffs have pled a claim for damages, and no counterclaims have been interposed against them, thereby satisfying the first and fourth elements for attachment. At issue, then, are the second element—whether plaintiffs have a probability of success on the merits of their claims—and the third—whether defendants have intentionally sought to defraud their creditors or to frustrate the enforcement of a judgment in plaintiffs' favor by disposing of their assets, or are about to do so. Because the Court finds that plaintiffs have not satisfied the third element, however, it need not address whether they have demonstrated a probability of success on the merits.

In order to establish that defendants have acted with fraudulent intent, plaintiffs point to three allegedly suspicious transactions: (1) the June 2009 change in ownership of the restaurant; (2) defendant Lin's transfer of the 68th Avenue property to his ex-wife, a process commenced in May 2009 and completed in April 2010; and (3) the purported future transfer of the restaurant to a third party. The Court does not find that any of these transactions suffices to meet plaintiffs'

5

burden.

*June 2009 Change in Restaurant Ownership*

Plaintiffs' most compelling—but still ultimately unconvincing—argument is that the change in ownership of the restaurant in June 2009 was effected in order to stymie this lawsuit. Plaintiffs claim that Ji Shiang's incorporation in March 2009 occurred only after defendants learned that plaintiffs and other employees were discussing the possibility of joining a union and / or filing a lawsuit against Perfect Team. In June 2009, Ji Shiang assumed control of the restaurant: the new company paid no consideration, but assumed all of Perfect Team's equipment and fixtures and then continued operating the restaurant with the same sign, menu, management, and staff (aside from plaintiffs Gao and Zheng, who were not rehired following the change in ownership). According to plaintiffs, there is no evidence that defendants attempted to advertise or sell the restaurant to any prospective buyers other than Lin; rather, plaintiffs claim, Cheng and Wang simply shifted nominal ownership to Lin and dissolved Perfect Team, but retained a covert ownership interest in Ji Shiang, continued to work in the restaurant and oversaw its operations. Thus, in plaintiffs' view, the transfer of the restaurant exhibits many of the badges of fraud that support pre-judgment attachment, including gross inadequacy of consideration, a close relationship between transferor and transferee, the transferor's insolvency as a result of the conveyance, a questionable transfer not in the ordinary course of business, secrecy in the transfer, and retention of control of the property by the transferor after the conveyance.

In response, defendants challenge each and every one of plaintiffs' claims. They deny that Perfect Team transferred the restaurant to Ji Shiang; rather, they claim, Perfect Team surrendered the restaurant's fixtures, furniture and equipment to its landlord in order to terminate the restaurant's lease. In defendants' view, if a transfer at all, it was for adequate consideration

(since the payments remaining on the lease exceeded the value of the fixtures, furniture and equipment), it was in the ordinary course of business (insofar as a commercial tenant surrendering assets to its landlord is not out of the ordinary), and it was not in any way secret. Nor was it in response to plaintiffs' lawsuit, about which defendants claim they were unaware prior to transfer incident to lease surrender. Finally, defendants deny that Cheng or Wang has any ownership interest in Ji Shiang or that Perfect Team was rendered insolvent by the transaction.

Reviewing the maneuvers in the light of the parties' widely divergent interpretations and the evidence adduced at the hearing, the Court finds that plaintiffs have not provided sufficient evidence of any of the badges that may support an inference of fraudulent intent. Plaintiffs have presented no reliable testimony nor documentary evidence to contradict defendants' account of the progression of ownership and control of the restaurant's assets from Perfect Team to the restaurant's landlord (a nonparty) to Ji Shiang. Nor do they present any proof one way or another that Perfect Team's surrender of the restaurant's fixtures, furniture and equipment to the landlord in order to terminate the restaurant's lease was anything but arm's length, much as Ji Shiang's subsequent surrender of the lease to the landlord (which has now prompted an eviction action brought by the landlord against Ji Shiang) appears to have been. By the same token, while Ji Shiang's assumption of control of the restaurant (using Perfect Team's former equipment and fixtures and the same sign, menu, management, and staff) appears suspicious, plaintiffs have not sufficiently demonstrated that the transaction actually was out of the ordinary course of the wind up of a business or featured gross inadequacy of consideration or a close relationship between transferor and the actual transferee. If, in fact, Perfect Team surrendered the premises to the landlord—as defendants allege, and as plaintiff has presented no reliable evidence to contradict—Jiang Shi would have acquired almost all of the non-human resources from the

7

landlord, not Perfect Team. In such circumstances, for plaintiffs to prevail, there would need to be proof of the landlord's active participation in the scheme. But plaintiffs have presented no evidence at all that the landlord is involved in the alleged fraudulent scheme. This failure to account for the landlord's role greatly reduces the degree of suspicion.

Similarly, plaintiffs have offered little to no reliable proof to support their allegations that other badges of fraud—namely, the insolvency of Perfect Team as a result of the conveyance, secrecy in the transfer; or retention of control of the property by the transferor after the conveyance—were present. Thus, on plaintiffs' scanty showing, there simply is not enough evidence for the Court to find that defendants acted with the intent requisite to justify attachment. Without question, the maneuvering for ownership of the restaurant and the churning effect of all of the dealings appears suspicious. But the proof neither explains nor eliminates defendants' account, including the role of the nonparty landlord, the buffer (as defendants tell it) to direct transfer. Moreover, even if plaintiffs' are correct that the transfer was not at arms' length and was for insufficient consideration, these facts in themselves would not necessarily indicate that defendants intended to defraud creditors or frustrate the enforcement of a judgment that might be rendered in plaintiffs' favor. *Cf. Kontogiannis*, 594 F. Supp. 2d at 322 ("Whatever the role of this transaction . . . plaintiff provides no evidence . . . to indicate that the sale is suspicious in the context of this Court's inquiry into whether [defendant] has intentionally disposed of assets to defraud his creditors or frustrate the enforcement of a judgment."). This would be true even if plaintiffs also are correct that defendants were aware of the potential for this lawsuit, in which case there would be, at very best, only a suspicion that defendants' intent was to stymie plaintiffs' efforts. Under New York law, all of that does not suffice as a foundation for ordering extraordinary provisional relief.

*Lin's transfer of the 68th Avenue Condominium*

The next transaction plaintiffs target is defendant Lin's transfer of the residence located at 240-58 68th Avenue, Douglaston, New York to his now ex-wife, Jia Ni Wang.[4] According to plaintiffs, on May 14, 2009, Lin converted sole ownership of his condominium at this address to joint ownership with Wang for no consideration. Further, on April 15, 2010, two days after Lin was served with the complaint in this lawsuit, he conveyed his remaining interest to his wife, also for no consideration. On April 27th of that year, Wang initiated divorce proceedings against Lin, and a divorce judgment was entered on November 9th by Judge Jeffrey Liebowitz of Supreme Court, Queens County. A stipulation that Wang would be awarded exclusive ownership and possession of the condominium, to which Lin irrevocably relinquished any interest, claim, right or title, including any marital interest he may have had under New York law, was incorporated by reference into the divorce judgment.

Plaintiffs make much of the timing of the transfer, especially the fact that both steps in the title transaction occurred prior to the consummation of the divorce, and of the fact that Lin may have been spied visiting the residence late in the evening on two separate occasions following the divorce. The Court finds neither fact at all suggestive of fraudulent intent. While plaintiffs argue that the fact the transaction occurred prior to the divorce indicates it was undertaken in bad faith, it seems equally or more likely that the transfer was undertaken for some good faith purpose: perhaps for tax reasons, or (most likely) in anticipation of the couple's divorce. That one potential, but relatively unlikely, motivation could be fraud is not sufficient to support attachment.

---

[4] Plaintiffs also seek to attach this property, on the theory that the transfer was fraudulent and (assumedly) that Lin retains an ownership interest in the property. To the extent that this is the case, attachment of the property is barred by the automatic stay following Lin's filing for bankruptcy.

Nor is plaintiffs' near-risible suggestion that Lin's visiting his ex-wife's domicile after the divorce might indicate that the divorce and / or associated transfer of assets were intended to defraud creditors or frustrate this lawsuit. This leaves only the coincidence that the second part of the transfer occurred two days after Lin was served with the complaint—far too slender a reed on which to base attachment. *Cf. Kontogiannis*, 594 F. Supp. 2d at 322 ("[T]he mere fact that the transaction occurred in temporal proximity to the start of this case does not overcome the conclusory nature of the allegation and does not evince fraudulent intent.").

Divorce is expensive; it has far-reaching financial, familial, legal and social consequences. The dividing up of property is an essential part of this process. Plaintiffs come nowhere near close to explaining the transaction here as an act of fraud. By consequence, attachment will not be ordered on this basis.

### *Alleged further transfer of Restaurant*

Finally, plaintiffs contend that Ji Shiang intends to transfer the restaurant once again in order to frustrate this lawsuit. In support of this contention, they claim that two nonparty employees informed them in January 2011 that the restaurant had been sold and that the new owner would take over management imminently. As further evidence of defendants' fraudulent intent, they also point to the closing of the restaurant in February 2011, one week after defendants were served with plaintiffs' motion for attachment, and three days before notice of this action was to be posted in the restaurant.

Again, this evidence simply is insufficient to support attachment. Moreover, although plaintiffs summarily discount defendants' alternative explanation of the restaurant's closing (that it has not been sold, but rather shut down for "personal and financial reasons"), subsequent events support defendants' explanation and discredit plaintiffs' speculations. On June 27th, counsel for

JAC SAL Realty, Inc., the restaurant's landlord, informed the Court that a warrant of eviction had been issued against Ji Shiang, but that no new tenant had yet been located. On July 22nd, counsel for Lin and Ji Shiang informed the Court that Lin had filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code. It is evident, therefore, that the restaurant has not been transferred to new owners.

To be clear, these subsequent events are not the bases for decision. They are offered merely to highlight how equivocal the nature of the proof upon which plaintiffs do rely. For this reason, whether or not barred by the automatic bankruptcy stay, the Court observes that attachment is certainly unwarranted on the proof submitted. Indeed, equivocalness is a fair description for all of plaintiffs' proof. That, simply, cannot support extraordinary prejudgment provisional relief.

## Conclusion

In sum, plaintiffs have failed to meet their burden in demonstrating that defendants have assigned, disposed of, encumbered, or secreted property (or are about to) with the intent to defraud creditors or frustrate the enforcement of a judgment that might be rendered in their favor. Accordingly, the motion for attachment is denied at this time.

**SO ORDERED.**

Dated: Brooklyn, New York
      August 11, 2011

s/ENV

_____
ERIC N. VITALIANO
U.S.D.J.

11