UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
LI RONG GAO, et al.,

                 Plaintiffs,

      -against-

PERFECT TEAM CORP., et al.,

                Defendants.
----------------------------------------------------X

**MEMORANDUM
AND    ORDER**

10 CV 1637 (ENV)

     On April 13, 2010, plaintiffs Li Rong Gao ("Gao") and Xiao Hong Zheng ("Zheng")

(collectively, "plaintiffs") filed this wage and hour class action against defendants Perfect Team

Corporation ("Perfect Team"), Ji Shiang, Inc. ("Ji Shiang"), Feng Lin ("Lin"), Chun Kit Cheng

("Cheng"), Jia Li Wang ("Wang"), and Cheuk Ping Chen ("Chen"), seeking damages and

injunctive relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206-207, and New

York Labor Law ("NYLL"). On August 25, 2010, plaintiffs filed an Amended Complaint

("Compl."), which added plaintiffs Shu F. Jiang ("Jiang"), Wei S. Tan ("Tan"), and Wei J. Wu

("Wu").[1] The Amended Complaint also revised defendant Chen's name to Zhuo Ping Chen.[2]

     By Notice of Motion dated May 7, 2012, plaintiffs seek sanctions against defendants

Perfect Team, Cheng, and Wang[3] (collectively, the "Perfect Team defendants"), and defendants

---

     [1]The claims of plaintiffs Jiang, Tan, and Wu were voluntarily dismissed with prejudice as
of March 28, 2012. (Docket # 181).

     [2]Defendant Chen has been proceeding pro se in this case since his attorney's motion to
withdraw was granted on November 29, 2010. (See Docket # 46).

     [3]According to plaintiffs' Complaint, filed April 13, 2010 ("Compl."), defendants Cheng
and Wang are husband and wife. (Compl. ¶ 19).

Ji Shiang and Lin (collectively, the "Ji Shiang defendants")[4] "in the form of default judgment, costs and attorneys' fees," pursuant to Federal Rule of Civil Procedure 37. (Pls.' Mem.[5] at 1).

For the reasons stated below, the Court grants in part and denies in part plaintiffs' motion.

## BACKGROUND

Plaintiffs' Complaint alleges that plaintiffs were servers at Guang Zhou Restaurant (the "Restaurant"), a Chinese restaurant located in Flushing, Queens, during the period from March 2006 through June 2009, when it was operated by the Perfect Team defendants, and during the period from June 2009 until the date of the Complaint, when it was operated by the Ji Shiang defendants. (Compl. ¶¶ 1, 2, 7, 8). Plaintiffs allege that, despite working more than 40 hours per week during significant portions of their employment, defendants failed to pay plaintiffs minimum wages, overtime premiums, and spread-of-hours pay in violation of the FLSA and NYLL. (Compl. ¶ 3). The Complaint further claims that defendants violated the NYLL by illegally withholding portions of plaintiffs' tips and retaliating against plaintiffs Gao and Zheng by terminating them after they complained about the unlawful employment practices. (Id.)

On June 8, 2010, the parties appeared for an initial conference before the undersigned, at which time a discovery schedule was set. (Docket # 19). The parties were ordered to exchange discovery requests and mandatory disclosures by June 25, 2010, and to provide responses to the requests by July 26, 2010. (Id.) Plaintiffs claim that they timely served their discovery requests

---

[4]Plaintiffs do not seek sanctions against defendant Chen in the instant motion.

[5]Citations to "Pls.' Mem." refer to Plaintiffs' Memorandum of Law in Support of Motion for Sanctions, dated May 7, 2012.

on defendants. (Pls.' Mem. at 5). Plaintiffs further claim that the Ji Shiang defendants served responses to their requests in a timely manner but that the responses were "severely deficient." (Id.) According to the plaintiffs, the Perfect Team defendants failed to respond at all. (Id.) In response, the Ji Shiang defendants contend that any alleged deficiencies in their responses are "not enough to impose sanctions" and that "Ji Shiang's current counsel was not involved in the case at that time." (J.S.'s Mem.[6] at 5). The Perfect Team defendants do not expressly deny the allegation that they failed to respond to plaintiffs' discovery requests by the original July 26, 2010 deadline. (P.T's Mem.[7] at 3).

On July 30, 2010, the parties appeared for a status conference before the undersigned, at which time the Court granted defendants an extension of time to respond to discovery until August 6, 2010. (Docket # 23). Plaintiffs claim that the Perfect Team defendants served their responses on August 9, 2010 – 3 days past the new deadline – and that their responses were deficient. (Pls.' Mem. at 6). For example, plaintiffs claim that the Perfect Team defendants produced only informal payroll records in response to a request for more than thirty categories of documents; in addition, they answered fewer than half of plaintiffs' interrogatories and provided no responses to plaintiffs' requests to admit. (Id.) The Perfect Team defendants contend that plaintiffs "provide no substantiation that such discovery responses were served three days late" and that defendants' current attorney "was not the one who allegedly late served the responses."

---

[6]Citations to "J.S.'s Mem." refer to Defendant Feng Lin's and Ji Shiang, Inc.'s Memorandum of Law in Opposition to Plaintiffs' Motion for Sanctions, filed July 2, 2012.

[7]Citations to "P.T.'s Mem." refer to the Memorandum of Law by Defendants Perfect Team Corporation, Chun Kit Cheng, and Jia Li Wang, in Opposition to Plaintiffs' Motion for Sanctions Under Fed. R. Civ. P. 37(b), filed on July 2, 2012.

(P.T.'s Mem. at 3).  The Ji Shiang defendants do not specifically address the question of whether they complied with the Court's Order in this instance, but they contend that "[a]s soon as [their current attorney] entered an appearance, the undersigned worked with Ji Shiang's previous counsel to provide supplement [sic] responses."[8]  (J.S.'s Mem. at 5).

On August 13, 2010, the Court Ordered the parties to submit letters regarding outstanding discovery deficiencies.  (Docket # 25).  On September 3, 2010, plaintiffs submitted a letter motion to compel discovery from both sets of defendants, which detailed alleged deficiencies in defendants' responses to plaintiffs' requests.  (Docket # 31).  Both sets of defendants claim that they were not required to file any papers in response to the Court's August 13, 2010 Order.  (P.T.'s Mem. at 3; J.S.'s Mem. at 5).

On October 5, 2010, the Court held a settlement conference with the parties.  (Docket # 36).  During the conference, the Court Ordered defendants to provide financial information to plaintiffs "to substantiate the defendants' claim of limited resources to pay a judgment or settlement."  (Id.; Pls.' Mem. at 6).  On November 3, 2010, a second settlement conference was held, at which time the undersigned gave defendants until November 24, 2010 to provide financial affidavits.  (Docket # 38).

Plaintiffs claim that the Perfect Team defendants never produced any financial information or affidavits to plaintiffs in response to the Court's Order and failed to provide documents specifically requested in plaintiffs' Request for Documents.  (Reply[9] at 1).  According

---

[8]The Ji Shiang defendants' current attorney, Benjamin B. Xue, Esq., entered a Notice of Appearance on December 1, 2010.  (Docket # 50).

[9]Citations to "Reply" refer to plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion for Sanctions, dated July 19, 2012.

4

to plaintiffs, the Jia Shiang defendants produced only Ji Shiang's 2009 corporate tax returns and bank statements for May 2009 to March 2010, and even this material was not provided until four months after the Court's Order. (Id.) Both sets of defendants contend that the Court's direction to provide financial information is not within the scope of a Rule 37(b) motion because the financial information was to be disclosed "for settlement purposes only. . .not to be disclosed with respect to discovery." (P.T.'s Mem. at 4; J.S.'s Mem. at 5-6).

At the November 3, 2010 settlement conference, the Court also Ordered defendants to supplement their discovery responses by November 24, 2010, or otherwise submit a letter if they believed that supplementation was unnecessary. (Docket ## 38, 40). On November 23, 2010, the Ji Shiang defendants filed a motion for an extension of time to provide supplemental responses (Docket # 44), and on November 24, 2010, the Perfect Team defendants notified the Court that they had retained a new attorney, who would be unable to represent them until the middle of December.[10] (See Docket # 53). On November 30, 2010, both sets of defendants requested additional time to supplement their discovery responses. (Docket ## 49, 51).

On December 7, 2010, the Court granted in part and denied in part defendants' requests for additional time to supplement their discovery responses. (Docket # 53). The Court's Order granted the Ji Shiang defendants' request to extend the time to produce a list of potential plaintiffs until December 10, 2010. (Id. at 2). The Order stated that the Court would continue to hold the Ji Shiang defendants' then lawyer, Douglas E. Rowe, Esq., responsible "for ensuring

---

[10]On November 23, 2010, the attorney for the Perfect Team defendants, Alfred S. Lui, Esq., filed a motion to withdraw as counsel. (Docket # 43). Mr. Lui's motion was granted on November 29, 2010 (Docket # 46), and on January 10, 2011, a Notice of Appearance was entered by Samuel Joseph Chuang, Esq., on behalf of the Perfect Team defendants. (Docket # 54).

5

timely responses to these discovery requests" and warned that "failure to timely respond may result in the imposition of sanctions."[11]  (Id.)  The Court also granted the Perfect Team defendants until December 31, 2010 to respond to all outstanding discovery requests, noting that further requests for extensions of time from either party were unlikely to be granted.  (Id.)

The Ji Shiang defendants provided supplemental responses on December 10, 2010; plaintiffs contend, however, that several material deficiencies remained.  (Reply at 2; see Docket # 88 at 6-7).  According to plaintiffs, the Jia Shiang defendants also failed to submit opt-in plaintiffs' names by the Court-ordered deadline.  (Reply at 2).  Plaintiffs also claim that the Perfect Team defendants did not supplement discovery by the Court-ordered deadline.  (Id.)  The Ji Shiang defendants deny that their supplementary responses were deficient and they claim that the supplemental responses they provided included a list of opt-in plaintiffs.  (J.S.'s Mem. at 7).  Similarly, the Perfect Team defendants deny that they failed to respond to plaintiffs' discovery requests by the deadline.  (P.T.'s Mem. at 4).

On January 19, 2011, a status conference was held before the undersigned,[12] at which all defendants were Ordered to produce the names and addresses of all putative class plaintiffs by January 27, 2011[13] and to serve supplemental discovery responses by February 11, 2011.

---

[11]On December 1, 2010, a Notice of Appearance was entered by the Ji Shiang defendants' current attorney, Benjamin B. Xue.  (Docket # 50).  However, Douglas E. Rowe did not file a motion to withdraw as counsel for the Ji Shiang defendants until January 12, 2011.  (Docket # 57).  Mr. Rowe's motion to withdraw was granted on January 19, 2011.  (Docket # 60).

[12]The Perfect Team defendants claim that the January 19, 2011 conference was the first conference attended by the Perfect Team defendants' current attorney.  (P.T.'s Mem. at 5).

[13]Plaintiffs had actually first requested "[d]ocuments sufficient to identify the full name, the last known address, and any other contact information, including but not limited to phone numbers, of all former and current employees of" defendants on June 25, 2010.  (See Docket #

6

(Docket # 61). At this conference, the Court commented to the defendants that ". . .we've been delayed in this case [by]. . .issues relating to not producing information." (1/19 Tr.[14] at 23). Plaintiffs claim that they filed their first motion for sanctions after defendants "again ignored the [January 27, 2011] Court-ordered deadline." (Pls.' Mem. at 7; Docket # 62). According to plaintiffs, the Perfect Team defendants disobeyed the Court's Order by providing only Chinese names (rather than legal, English names) and by failing to provide the names of Latino employees or addresses for any employees. (Reply at 2). Plaintiffs also claim that the Jia Shiang defendants provided most, but not all of the potential opt-in plaintiffs' names. (Id.) Further, plaintiffs allege that, although the Jia Shiang defendants supplemented discovery, their responses remained deficient. For example, plaintiffs claim that the Jia Shiang defendants provided a copy of their June 1, 2009 lease but did not produce copies of their subsequent lease assignment or cancellation agreement, which plaintiffs later received from defendants' property manager, David M. Weinberger. (Id.; see Weinberger Aff.[15] ¶¶ 12, 14, 18).

The Perfect Team defendants claim that they did respond by the January 27, 2011 deadline by providing "the only names that they had for the potential plaintiffs, which were their Chinese names. . . .The Perfect Team [d]efendants did not wish to speculate on the English version of the names." (P.T.'s Mem. at 6). The Perfect Team defendants also contend that when

---

31, Exs. A-C, F-G). Both sets of defendants failed to produce such documents in their initial discovery responses. (See Docket # 31, Exs. D-E, H-I).

[14]Citations to "1/19 Tr." refer to the Transcript of Civil Cause for Conference before the undersigned on January 19, 2011.

[15]Citations to "Weinberger Aff." refer to the Affirmation of David M. Weinberger, filed on May 7, 2012.

later Ordered by the Court to provide an English translation of the Chinese names on May 13, 2011, they "complied with such direction." (Id.) The Jia Shiang defendants claim that they "provided the names and addresses of three employees who had inadvertently been omitted from a previous disclosure[] of names," and that any claim by plaintiffs that additional employees' names were omitted is "pure speculation." (J.S.'s Mem. at 8). The Ji Shiang defendants also contend that they provided an additional supplemental response to plaintiffs by February 11, 2011. (Id.)

On February 9, 2011, the Court issued an Order directing defendants to "submit signed, sworn affidavits" to the Court "[t]o the extent that defendants believe they have turned over all responsive information" by February 15, 2011. (Docket # 76). The Perfect Team defendants submitted one-sentence affidavits stating: "Pursuant to the Court's order dated February 9, 2011, filed as ECF No. 76, I believe that Perfect Team and I have provided all responsive information." (Docket # 83). According to plaintiffs, the Ji Shiang defendants provided affidavits to the plaintiffs but did not initially file them with the Court. (Pls.' Mem. at 7-8; see Docket # 85).

On February 18, 2011, this Court Ordered defendants to show cause, by February 23, 2011, why sanctions should not be imposed pursuant to Fed. R. Civ. P. 37, including striking their Answers and recommending that default be entered against them. (Docket # 86). The Ji Shiang defendants were also Ordered to Show Cause why the Court should not find them in contempt for ignoring this Court's Order of February 9, 2011. Defendants filed their responses to the Court's Order on February 23, 2011 (Docket ## 87, 89), and plaintiffs submitted a letter regarding the Court's Order on the same date. (Docket # 88).

On May 13, 2011, a status conference was held before the undersigned, at which the

8

Court Ordered the parties to arrange for an inspection of the Restaurant on May 20, 2011. (Docket # 116). The Court also ordered all defendants "to provide detailed responses to discovery outlined in" plaintiffs' February 23, 2011 letter by May 27, 2011. (Id.) The Court noted at the conference that the Perfect Team defendants "clearly" had not complied with their discovery obligations. (5/13 Tr.[16] at 15). The Court stated that it would give the Perfect Team defendants "one more chance" and ordered them to supplement their discovery responses. (Id. at 16). The Court held that any objections to plaintiffs' discovery requests from the Perfect Team defendants had been waived. (Id. at 17-18). The Court also noted that if the Perfect Team defendants failed to comply, the undersigned would "consider the plaintiffs' motion for sanctions at that time." (Id. at 35).

According to plaintiffs, the Ji Shiang defendants did comply with the Court's Order to supplement their discovery responses. (Reply at 2). However, plaintiffs claim that, on May 17, 2011, the Ji Shiang defendants informed plaintiffs that they could not provide plaintiffs with access to the Restaurant because the Ji Shiang defendants had forfeited possession of the premises to their landlord. (Pls.' Mem. at 8-9). On May 27, 2011, the Perfect Team defendants served supplementary interrogatory responses along with affidavits from both sets of defendants stating that defendants had already produced all responsive documents. (Pls.' Mem. at 9). According to plaintiffs, however, the Perfect Team defendants' supplementary interrogatory responses "[did] not provided detailed responses as ordered. Instead, defendants simply [re-sent] the same interrogatory responses previously served." (Reply at 2).

---

[16]Citations to "5/13 Tr." refer to the Transcript of Civil Cause for Conference before the undersigned on May 13, 2011.

9

On June 29, 2011, plaintiffs filed a motion for a pre-motion conference before the Honorable Eric Vitaliano to move for sanctions against the Ji Shiang defendants because of the Ji Shiang defendants' alleged refusal to provide access to the Restaurant. (Docket #124). Plaintiffs' motion also complained that defendants were selling the Restaurant's assets in violation of a prior court Order. (Id.) On August 5, 2011, Judge Vitaliano denied plaintiffs' request to move for sanctions with leave to renew.[17] (Minute Entry, filed August 15, 2011). On May 7, 2012, plaintiffs filed the instant motion for sanctions.

Plaintiffs argue that defendants' disobedience has been willful. (Pls.' Mem. at 9-23). Plaintiffs contend that defendants' behavior constitutes a "'pattern of prolonged and vexatious obstruction of discovery with respect to highly relevant records.'" (Id. at 9 (quoting Southern New England Telephone Co., 624 F.3d 123, 148 (2d Cir. 2010)). Plaintiffs also complain that "defendants' delay tactics have mired plaintiffs and the Court in discovery for almost two years" and that plaintiffs "have had to make repeated applications to the Court for intervention. . . ." (Id. at 10).

According to plaintiffs, in addition to "defendants' pattern of obstruction, defendants' willfulness is even more clearly indicated by their deposition testimony, which has clearly revealed the falsity of the affidavits defendants filed in 2011 to avoid sanctions." (Id.) Plaintiffs point to the deposition of defendant Lin, one of the Ji Shiang defendants. According to plaintiffs, Lin admitted in a deposition "that he had not conducted an adequate search for responsive

---

[17]Judge Vitaliano scheduled a conference for September 15, 2011 to assess the status of the case "in light of defendant Lin's bankruptcy filing." (Minute Entry, filed August 15, 2011). On October 17, 2011, plaintiffs informed the Court that defendant Lin's bankruptcy proceedings had been resolved, and the instant litigation resumed. (Docket # 152).

10

documents." (Id. at 13)  During his March 13, 2012 deposition, Lin indicated that he may still

have documents related to the Guang Zhou Restaurant in his home.  (Id.)  Further, Lin stated that

he did not inspect Ji Shiang's computer or his personal e-mail account for documents requested

by the plaintiffs and that he threw away or left behind certain documents, including menus, that

he found in the Restaurant.  (Id. at 13-15).

      Plaintiffs also take issue with the February 23, 2012 deposition of defendant Cheng, one

of the Perfect Team defendants.  Plaintiffs claim that although Cheng "previously submitted two

affidavits swearing that he had turned over all responsive documents, at his deposition, Mr.

Cheng admitted that he had in fact never himself searched for any of the documents requested."

(Id. at 9).  Plaintiffs quote Cheng as stating:  "I was not the one to look for these documents [that

plaintiffs had requested]. . . . It was my wife who usually handled and managed these

documents."  (Id. at 10-11).  Cheng also stated in his deposition that he did not review files on

his office computer or recordings from a camera in the Restaurant and that he did not know

whether his wife had done so.  (Id. at 11-12).  According to plaintiffs, "[h]aving made no

personal efforts to search for and produce documents, Mr. Cheng could not have sworn on

personal knowledge that all responsive documents had been produced."  (Reply at 3).

      Plaintiffs further claim that Cheng "admitted that at least one of the interrogatory answers

he provided was not his own answer."  (Pls.' Mem. at 12).  In response to a question about the

meaning of one of his interrogatory responses, Cheng replied, "[t]his sentence was not put in by

me. . . . I believe that the sentence would not be something that came from me."  (Id.)  When

asked why he signed a document that contained statements with which he did not agree, Cheng

stated "[w]ell, basically, I know roughly what this document was talking about, but there were

lots of details that I would not be able to remember." (Id.) Plaintiffs claim that Cheng's "admission calls into question whether the other answers fully and accurately conveyed Mr. Cheng's and [Perfect Team's] knowledge." (Id. at 13).

Plaintiffs contend that defendants Cheng, Wang, and Lin have "lied repeatedly about the relationship between Perfect Team and Ji Shiang. (Id. at 16). During their depositions, Cheng and Wang both stated that they did not know Lin intended to take over operation of the Restaurant until the Restaurant was re-opened under Ji Shiang's management. (Id. at 17-18). Plaintiff claims that these statements are contradicted by documents signed by Cheng and Lin in April 2009 transferring the lease of the Restaurant premises to Lin. (Id. at 17). Plaintiffs also submit a document purporting to show that "Wang was integrally involved in helping Ji Shiang and Feng Lin set up a corporate bank account for its eventual assumption of the restaurant business." (Id. at 18, Ex. K). This document is a Citibank business account opening agreement signed by both Lin and Wang, listing Lin as the president of Ji Shiang and Wang as the general manager. (Id. Ex. K).

Next, plaintiffs claim that defendants provided false testimony on the question of whether any property or lease was transferred between the Perfect Team and Ji Shiang defendants. (Id. at 18). According to plaintiffs, defendants have always taken the position that no property was ever transferred from Perfect Team to Ji Shiang. (Id.) For example, Chen and Lin stated in their depositions that they did not remember entering into an agreement with the landlord when Perfect Team stopped operating the Restaurant in the summer of 2009. (Id. at 19-20). Yet, plaintiffs claim that, after the depositions of Lin, Wang, and Cheng were conducted, plaintiffs received documents from the Restaurant's property manager showing that, on April 30, 2009,

12

defendants entered into a series of related agreements assigning Perfect Team's lease of the Restaurant premises to Ji Shiang. (Id. at 21 (citing Weinberger Aff. ¶¶ 9-11, Ex. F, H)). Moreover, according to Mr. Weinberger, defendants informed him that the lease assignment was necessary to avoid an undisclosed legal problem. (Id. at 21 (citing Weinberger Aff. ¶ 8)).

Finally, plaintiffs allege that in February 2011, once a list of putative opt-in plaintiffs was provided by defendants and the class notice was finalized, defendants closed the restaurant before the notice could be posted. (Id. at 22-23). According to plaintiffs, although defendants cited "consistent financial losses" as the reason for the Restaurant's closing, the Restaurant's business "appears to have doubled in volume during the six months prior to the. . .closure." (Id. at 23).

In response, the Ji Shiang defendants claim that "there was no willful disobedience since plaintiffs have failed to show any disobedience to begin with." (J.S.'s Mem. at 13). The Ji Shiang defendants claim that plaintiffs misquote Lin's deposition. (Id.) For example, the Ji Shiang defendants contend that, after Mr. Lin supposedly indicated that he did not search his home for documents, he stated that he had given all documents that might have been brought to his home to his lawyers already. (Id.) The Ji Shiang defendants also claim that, with respect to plaintiffs' claim that Mr. Lin did not conduct an adequate search for documents in his e-mail, "[p]laintiffs failed to show that Mr. Lin had any responsive documents in his personal email account. In fact, the transcript [of Lin's deposition]. . .shows that Mr. Lin only used his email account with respect to a very limited matter that was work-related." (Id. at 13-14). With respect to the documents supposedly left in the restaurant by Lin, the Ji Shiang defendants claim that "there is absolutely no proof that Mr. Lin destroyed such documents with a culpable state of mind" and that, even if he had, such documents were the property of Perfect Team and Mr. Lin

13

had no duty to preserve them. (Id. at 14). Defendants also claim that plaintiffs' complaint that Lin failed to inspect Ji Shiang's computer for responsive documents does not support the imposition of sanctions because plaintiffs have failed to name the documents that Lin failed to turn over. (Id. at 15).

With respect to plaintiffs' allegations that defendants lied about the relationship between Perfect Team and Ji Shiang, the Ji Shiang defendants claim that these allegations are "baseless, false, and irrelevant to this motion [beacuse] [p]laintiffs have not shown how such allegations come under the purview of Rule 37(b)." (Id.) Specifically, the Ji Shiang defendants claim that plaintiffs "incorrectly rely solely on the documents provided by Mr. Weinberger and his affidavit in coming to such conclusions." (Id. at 16). According to the Ji Shiang defendants, Mr. Weinberger was scheduled to be deposed on April 5, 2012, but plaintiffs canceled the deposition without explanation and obtained an affidavit from him instead. (Id. at 17-18). The Ji Shiang defendants claim that plaintiffs failed to disclose the Weinberger Affidavit despite an Order from this Court to do so on April 16, 2012.[18]

The Perfect Team defendants similarly deny plaintiffs' allegations that their alleged non-compliance with the Court's Orders has been willful. The Perfect Team defendants claim that Cheng's admission that he did not personally search for documents does not show that his 2011 affidavit stating that he had turned over all responsive documents was false. (P.T.'s Mem. at 9). The Perfect Team defendants also claim that plaintiffs' allegation that Cheng lied in one of his interrogatories is baseless because "Perfect Team responded to the interrogatory, not defendant

---

[18]Plaintiffs contend that they served defendants copies of the documents received from the Restaurant's property manager on July 18, 2011. (Reply at 9).

14

Cheng individually." (Id. at 10). Next, the Perfect Team defendants take issue with plaintiffs'

allegation that Cheng and Wang lied about the relationship between Perfect Team and Ji Shiang.

The Perfect Team defendants contend that the account opening documents submitted by

plaintiffs do not show that Wang "'was integrally involved in helping Ji Shiang and Feng Lin set

up a corporate bank account;'" instead, defendants claim, the documents show only that Wang

was a "contact person at the restaurant." (Id.) The Perfect Team defendants question plaintiffs'

reliance on the Weinberger Affidavit, claiming that the documents Mr. Weinberger provided to

the plaintiffs do not accurately reflect "the true nature of the transaction" between defendants and

the Restaurant's property manager. (Id. at 11). Finally, the Perfect Team defendants claim that

"if plaintiffs seek to attack the veracity of the Perfect Team [d]efendants' statements, the proper

time and place for that would be at trial, not in a Rule 37(b) motion. (Id. at 12).


## DISCUSSION

### I. Legal Standard - Rule 37 Sanctions

Plaintiffs contend that, because the defendants have "flout[ed]. . .their. . .discovery

obligations," a default judgment should enter against each of them. (Pls.' Mem. at 1). Plaintiffs

also seek costs and attorneys' fees pursuant to Rule 37. (Id.)

"Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has

wide discretion in sanctioning a party for discovery abuses." Nycomed U.S. Inc. v. Glenmark

Generics Ltd., No. 08 CV 5023, 2010 WL 3173785, at *3 (E.D.N.Y. Aug. 11, 2010) (citing

Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 267 (2d Cir. 1999). "For less severe sanctions,

such as fines and cost-shifting, the Court's inquiry focuses mainly on the misconduct of the

responding party; for more severe sanctions, such as dismissal, preclusion[,] or the imposition of an adverse inference, the court must also assess whether the requesting party suffered prejudice as a result of the loss or withholding of evidence." Nycomed U.S. Inc. v. Glenmark Generics Ltd., No. 08 CV 5023, 2010 WL 3173785, at *3 (E.D.N.Y. Aug. 11, 2010). In deciding what the appropriate sanction in a matter is, the court should consider "'the prophylactic, punitive[,] and remedial rationales' of discovery sanctions." Id. at *10 (quoting Passlogix, Inc. v. 2FA Tech., LLC, 2FA, Inc., No. 08 CV 10986, 2010 WL 1702216, at *37 (S.D.N.Y. Apr. 27, 2010) (discussing discovery sanctions in the context of spoilation of evidence)).

Rule 37(b)(2) provides that if a party "fails to obey an order to provide or permit discovery," the Court's response may include any of the following sanctions:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). "Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); see also Transatlantic Bulk Shipping Ltd. v. Saudi Chartering, S.A., 112 F.R.D. 185, 189 (S.D.N.Y.

1986) (noting that Rule 37(b) "provides for sanctions where a party fails to honor its disclosure obligations, especially after court orders").  Given that "compliance with discovery orders. . .is necessary to the integrity of our judicial process. . .part[ies] who flout[] such orders do so at [their] peril."  Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 73 (2d Cir. 1988).

 In deciding whether to impose Rule 37 sanctions, trial courts consider the following factors:

> (1) the history of the failure to comply with court orders; (2) whether the party violating the order was given ample time to respond; (3) the effectiveness of alternative sanctions; (4) whether the noncomplying party was warned and given an opportunity to argue against the impending sanction; (5) the prejudice to the adversary caused by the failure to comply; (6) whether the documents at issue would normally be readily obtainable; and (7) the extent of the party's personal responsibility.

Burke v. ITT Auto., Inc., 139 F.R.D. 24, 34 (W.D.N.Y 1991); see also Arnold v. Krause, Inc., 232 F.R.D. 58, 76 (W.D.N.Y. 2004).

 Even though "[d]ismissal under Rule 37 is an extreme sanction, to be imposed only in extreme circumstances," Jones v. Niagara Frontier Trans. Auth., 836 F.2d 731, 735 (2d Cir. 1987), the Second Circuit "has consistently recognized" that where "a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault," striking the pleadings and entering default judgment under Rule 37 is appropriate.  S.E.C. v. Setteducate, 419 Fed. Appx. 23, 24 (2d Cir. 2011); see also Software Freedom Conservancy, Inc. v. Best Buy Co., No. 09 CV 10155, 2010 WL 2985320, at *2 (S.D.N.Y. July 27, 2010) (citing Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130 (2d Cir. 2007)).  Courts in this circuit have held that a party's failure to comply with a discovery order is willful when the court's order is clear, the party has

17

understood the order, and the party's failure to comply is not due to circumstances beyond the party's control. See, e.g., Jensen v. Allied Burton Sec. Servs., No. 10 CV 2043, 2011 WL 4382347, at *3 (E.D.N.Y. May 27, 2011), report and recommendation adopted, 2011 WL 4382459 (E.D.N.Y. Sep. 20, 2011); In re Fosamax Prods. Liab. Litig., No. 07 CV 3652, 2010 WL 1779276, at *2 (S.D.N.Y. April 27, 2010). The court in Trustees of Local 522 Welfare Fund of New York & New Jersey v. Flexwrap Corp. found that, where the defendant exhibited a "pattern of noncompliance," and was given "numerous opportunities to cure its violations," the defendant's noncompliance was willful and a default judgment was granted in favor of plaintiffs. No. 09 CV 1417, 2010 WL 5057263, at *1 (E.D.N.Y. Nov. 5, 2010), report and recommendation adopted, 2010 WL 5067971 (E.D.N.Y. Dec. 2, 2010); see also Software Freedom Conservancy, Inc. v. Best Buy Co., 2010 WL 2985320 (granting default judgment where defendant refused to comply with discovery obligations); MCI Worldcom Commons., Inc. v. Gamma Commons. Grp., Inc., 204 F.R.D. 259 (S.D.N.Y. 2001) (granting default judgment where defendants had repeatedly failed to comply with formal and informal discovery requests and where defendants failed to respond to plaintiffs' motion for sanctions).


II. Analysis

A. The Perfect Team Defendants

The Perfect Team defendants claim that they did not disobey any of the Orders identified in plaintiffs' motion. (P.T.'s Mem. at 3). Further, they contend that much of their allegedly sanctionable action predates the Perfect Team defendants' appointment of their current attorney. (P.T.'s Mem. at 2-3). Having reviewed the record, the Court finds that the Perfect Team

defendants have clearly failed to obey several of the Court's discovery Orders, both before and after Mr. Chuang became counsel of record.

First, the Perfect Team defendants failed to respond to plaintiffs' initial discovery requests as Ordered by the Court on June 8, 2010. When granted additional time to respond on July 30, 2010, the Perfect Team defendants again flouted the Court's Order by missing the new deadline of August 6, 2010 by three days. The Perfect Team defendants do not specifically deny this allegation. Rather, they merely claim that plaintiffs have "provide[d] no substantiation that such discovery responses were served three days late." (P.T.'s Mem. at 3). Further, it is undisputed that the Perfect Team defendants' late-served discovery responses were deficient in that they failed to respond to plaintiffs' requests to admit, answered fewer than half of plaintiffs' interrogatories, and produced only one category of documents in response to a request for more than thirty categories of documents. (See Docket #31, Ex. A-E).

Second, after having failed to comply with several earlier orders, the Perfect Team defendants provided only Chinese versions of the potential plaintiffs' names in response to the Court's January 19, 2011 direction to produce the names and addresses of all putative class plaintiffs. The Perfect Team defendants also failed to provide the names of Latino employees and the addresses of the putative class plaintiffs. Although the Perfect Team defendants argue that the failure to provide English names of their Chinese employees was "substantially justified" (P.T.'s Mem. at 6), the Court disagrees. Defendants' assertion that they could not provide English versions of their employees' names raises serious questions as to how, as an employer, defendant complied with federal and state reporting requirements using only the Chinese characters. More importantly, defendants do not even dispute plaintiffs' claim that defendants

19

failed to provide any addresses for these employees. Nor do they dispute the fact that no Latino employees' names were produced.

The Perfect Team defendants again disobeyed a Court Order by failing to comply with the Court's May 13, 2011 Order directing defendants to supplement their discovery responses by May 27, 2011. Plaintiffs claim that defendants' responses, although timely, consisted only of "the same interrogatory responses previously served" along with affidavits stating that defendants had already produced all responsive documents.[19] (Reply at 2; Pls.' Mem. at 9). The Perfect Team defendants' only response on this point is to claim unpersuasively that plaintiffs "do not say how the Perfect Team Defendants have disobeyed this order." (P.T.'s Mem. at 7).

B. The Jia Shiang Defendants

The Jia Shiang defendants claim that they have "complied with each and every discovery order this Court has issued" and that they have "provided thousands of additional documents through supplemental responses." (J.S.'s Mem. at 3). However, the Court finds that the Ji Shiang defendants have also failed to obey several of the Court's discovery Orders.

First, plaintiffs claim that the Ji Shiang defendants have submitted severely deficient discovery responses in connection with this case. With respect to the Court's June 8, 2010 Order directing the parties to exchange discovery, the Ji Shiang defendants do not expressly deny plaintiffs' allegation that their responses were deficient; instead, they argue that "such a claim is not enough to impose sanctions," and they note that the Ji Shiang defendants' current counsel was not involved in the case at that time. Further, it is undisputed that, pursuant to the Court's

---

[19]As noted above, plaintiffs complained that defendants had only responded to half of the interrogatories and provided no response to the requests to admit. Thus, this effort at "supplementation" by the Perfect Team defendants was clearly deficient.

January 19, 2011 Order directing defendants to supplement discovery, the Ji Shiang defendants produced only their lease for the Restaurant premises, but not the related lease assignment or cancellation agreement, which are both clearly response to plaintiffs' document requests. For example, plaintiffs requested information and documents related to "the purchase, sale, lease, or transfer of any property by Ji Shaing. . .including. . .the Restaurant space. . . ." (Docket # 31, Ex. G ¶¶ 25). They also requested documents concerning "the contemplated purchase or sale of the Restaurant. . . ." (Id. ¶ 26).

Next, the Ji Shiang defendants failed to comply fully with the Court's Orders to produce a list of potential class plaintiffs. On December 7, 2010, the Court granted the Ji Shiang defendants an extension of time until December 10, 2010 to produce such a list, and when they failed to produce the full list, defendants were again Ordered to produce the list on January 19, 2011. The Ji Shiang defendants claim that they complied with the Court's Order, but defendants admit that the names and addresses of three employees were at first "inadvertently. . .omitted" until the Ji Shiang defendants finally produced them pursuant to the January 19, 2011 Court Order. (J.S.'s Mem. at 8).

The Ji Shiang defendants also failed to cooperate with plaintiffs to arrange for an inspection of the Restaurant, as Ordered by the Court on May 13, 2011. Although the Ji Shiang defendants claim that they could not provide plaintiffs with access to the Restaurant because they had already forfeited possession of the premises to their landlord, the Court is not satisfied that defendants made a reasonable effort to comply with the Court's Order. Specifically, defendants' landlord, David M. Weinberger, submitted a sworn statement indicating that his company did not gain possession of the Restaurant premises until Ji Shiang was evicted on or about September 7,

21

2011. (Weinberger Aff. at ¶ 19). The Ji Shiang defendants fail to provide any explanation for why an inspection could not have been arranged in the four month period between the Court's Order in May and Ji Shiang's eviction in September.

C. Appropriate Sanctions

In this case, both sets of defendants have clearly exhibited a "pattern of noncompliance," and have been given "numerous opportunities to cure [their] violations." Trustees of Local 522 Welfare Fund of New York & New Jersey v. Flexwrap Corp., 2010 WL 5057263. The defendants' repeated failure to timely comply with the Court's numerous Orders and their failure to provide complete and comprehensive responses to plaintiffs' discovery requests support the imposition of sanctions. Defendants' main excuse appears to be that their current counsel was not representing them at the time of the noncompliance. (See J.S.'s Mem. at 5; P.T.'s Mem. at 3). Not only is this not a valid excuse, see Motown Record Co., L.P. v. Motown Beverage Co. of Ohio, 165 F.3d 14 (2d Cir. 1998) (quoting Davidson v. Keenan, 740 F.2d 129, 133 (2d Cir.1984) and holding, "it is well-settled that litigants are 'legally responsible for their attorneys' conduct'"), cert. denied, 526 U.S. 1159 (1999), but the noncompliance has continued even with the current counsel.[20] Further, there is no question that defendants' conduct has caused the discovery phase of this litigation to drag on for more than two years, prejudicing plaintiffs' ability to pursue their claims against defendants. Imposition of sanctions should come as no

---

[20]As noted above, the Perfect Team defendants' current attorney had appeared in this case as of January 10, 2012. (supra n.10). The Court finds that the Perfect Team defendants failed to comply with at least two Orders after the date of this appearance. (See discussion p. 18-20). Similarly, the Ji Shiang defendants' current attorney noted his appearance on December 1, 2010 (supra n.11), and the Court has noted at least one Order violated by the Perfect Team defendants after this date. (See discussion p. 20-22).

surprise to defendants after the Court's many Orders directing defendants to supplement discovery.

The Court now faces the challenge of determining an appropriate sanction given the circumstances. Rule 37 permits the imposition of "just" sanctions; the severity of sanction must be commensurate with the non-compliance. Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007).

First, under Rule 37, the Court has discretion to Order entry of default. Although entry of default is a severe sanction, it may be justified where parties repeatedly and willfully fail to produce discovery or otherwise cooperate and thereby create a substantial delay in the case. See Minotti v. Lensink, 895 F.2d 100, 103 (2d Cir. 1990) (finding that the imposition of default as a Rule 37 sanction was not an abuse of discretion where the sanctioned party had failed to heed discovery orders on several occasions, thus delaying the case nearly two years).

Here, this Court has repeatedly allowed defendants additional time to comply with discovery Orders and informed them of the actions they must take in order to comply with the Orders. With respect to plaintiffs' allegation that "defendants' acts are calculated and willful rather than negligent," the Court finds that the record supports this conclusion. The pattern of non-compliance and myriad inconsistencies in the defendants' testimony call into question their credibility and support a finding of bad faith on the part of the defendants. However, because the severe sanction of default should be used sparingly, see Jones v. Niagara Frontier Trans. Auth., 836 F.2d at 735, the Court declines at this time to recommend imposition of this harshest of sanctions. Defendants are hereby warned, however, that any further failure to cooperate with the Court's Orders will be construed as willful noncompliance and the Court will recommend that

23

defendants' Answers be stricken.

Next, the Court may choose to impose an adverse inference against the defendants pursuant to Rule 37.  See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002); see also Treppel v. Biovail Corp., 249 F.R.D. 111, 120 (S.D.N.Y. 2008) (holding that "the spoliation of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction'").  Given the pervasive nature of defendants' defiance, the Court finds that an adverse inference is an appropriate sanction that would help to mitigate the prejudice caused by defendants' conduct. Although plaintiffs have not specifically requested such an inference, the Court will allow plaintiffs to suggest one that would appropriately account for defendants' failure to produce records.

Moreover, although the Court declines to enter a default against the defendants at this time, defendants' failure to comply with the Court's Orders and failure to provide discovery is so egregious that it warrants the imposition of additional sanctions including monetary sanctions. Thus, in addition to precluding defendants from conducting any further depositions or requesting any further discovery from plaintiffs in this case, the Court Orders defendants to pay the reasonable attorney's fees and costs incurred by plaintiffs for each of the following:

1.    The July 30, 2010 status conference before the undersigned.

2.    Plaintiffs' September 3, 2010 motion submitted to this Court.

3.    The November 3, 2010 settlement conference before the undersigned.

4.    The January 19, 2011 status conference before the undersigned.

5.    Plaintiffs' January 28, 2011 motion for contempt.

24

6.      Plaintiffs' February 23, 2011 letter regarding the Court's February 18, 2011 Order
to show cause.

7.      The May 13, 2011 status conference before the undersigned.

8.      Plaintiffs' June 29, 2011 request to move for sanctions before Judge Vitaliano.

9.      The instant motion for sanctions.

Moreover, because defendants' failure to comply with the discovery process has
inevitably resulted in plaintiffs paying for numerous phone calls, e-mail exchange, and letters to
defendants' counsel aimed at procuring defendants' compliance with discovery, the Court Orders
defendants to reimburse plaintiffs for these costs, as well. See Nycomed U.S. Inc. v. Glenmark
Generics Ltd., 2010 WL 3173785, at *3 (discussing the court's discretion pursuant to Rule 37);
Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. at 157
(holding that "it is generally appropriate, at a minimum, to require a party that has not complied
with its discovery obligations to pay the reasonable fees and costs incurred by the moving party
in seeking disclosure and/or in seeking discovery sanctions").

Plaintiffs are Ordered to submit their time sheets and billing records setting out the costs
incurred and the time they spent on the aforementioned items, which the Court will review to
make a final determination of the amount owed by each set of defendants to plaintiffs. Plaintiffs
should clearly specify the portion of time and costs attributable to each set of defendants.

CONCLUSION

For the reasons stated above, the Court denies plaintiffs' request that defendants' Answer be stricken and that plaintiffs be granted default judgment. However, the Court hereby Orders defendants to pay attorneys' fees and costs associated with their failure to comply with the Court's discovery Orders. The Court further precludes defendants from conducting any additional depositions or requesting any further discovery from plaintiffs.

The Court Orders plaintiffs to produce their time sheets and billing records for the expenses they incurred in submitting their discovery letter motions to the Court and for participating in the conferences focused on procuring defendants' compliance in the discovery process. These items are delineated in the bulleted list above.

Additionally, the Court Orders plaintiffs to produce their billing records for any e-mails, letters, or phone calls they made to defendants that were for the sole purpose of compelling defendants to comply with the discovery process. Once plaintiffs have submitted all relevant billing statements (along with any explanation that may be necessary), the Court will determine the amount defendants owe in attorney's fees and costs for their lack of compliance with the discovery process.

Finally, plaintiffs are permitted to submit to the Court a suggested adverse inference that would appropriately account for defendants' failure to produce records.

**SO ORDERED.**
Dated: Brooklyn, New York
         January 28, 2013

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

26