UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
LI RONG GAO, et al.,

                       Plaintiffs,

            -against-

PERFECT TEAM CORP., et al.,

                    Defendants.
-----------------------------------------------------X

**REPORT AND
RECOMMENDATION**

10 CV 1637 (ENV)

On April 13, 2010, plaintiffs Li Rong Gao ("Gao") and Xiao Hong Zheng ("Zheng") (collectively, "plaintiffs") filed this wage and hour class action against defendants Perfect Team Corporation ("Perfect Team"), Ji Shiang, Inc. ("Ji Shiang"), Feng Lin ("Lin"), Chun Kit Cheng ("Cheng"), Jia Li Wang ("Wang"), and Cheuk Ping Chen ("Chen").  Plaintiffs seek damages and injunctive relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206-207, and New York Labor Law ("NYLL"), arising out of their employment at the Guang Zhou Restaurant (the "Restaurant").

By Notice of Motion dated May 7, 2012, plaintiffs sought sanctions against defendants Perfect Team, Cheng, and Wang[1] (collectively, the "Perfect Team defendants"), and defendants Ji Shiang and Lin (collectively, the "Ji Shiang defendants")[2] "in the form of default judgment, costs and attorneys' fees," pursuant to Federal Rule of Civil Procedure 37.  (Pls.' Mem.[3] at 1).

---

[1]According to plaintiffs' Complaint, filed April 13, 2010 ("Compl."), defendants Cheng and Wang are husband and wife.  (Compl. ¶ 19).

[2]Plaintiffs did not seek sanctions against defendant Chen.

[3]Citations to "Pls.' Mem." refer to Plaintiffs' Memorandum of Law in Support of Motion for Sanctions, dated May 7, 2012.

1

On January 28, 2013, the Court granted in part and denied in part plaintiffs' motion for sanctions

("Ord."). Specifically, the Court declined to recommend that plaintiffs be granted default

judgment, but the Court Ordered defendants to pay attorneys' fees and costs associated with their

failure to comply with the Court's discovery Orders. Plaintiffs were Ordered to produce their

time sheets and billing records for the expenses they incurred in their efforts to remedy

defendants' discovery failures. Plaintiffs were also permitted to submit to the Court a suggested

adverse inference that would appropriately account for defendants' failure to produce records.

Pursuant to the Court's January 28, 2013 Order, plaintiffs have submitted a proposed

adverse inference as well as a breakdown of the hours and expenses for plaintiffs' efforts to

remedy the defendants' discovery failures. Having reviewed plaintiffs' submissions, the Court

respectfully recommends that the Perfect Team defendants be Ordered to reimburse plaintiffs in

the amount of $22,619.69, and the Ji Shiang defendants be Ordered to reimburse plaintiffs in the

amount of $25,141.19 in attorneys' fees and costs for their lack of compliance with the discovery

process. The Court also finds that plaintiffs' suggested adverse inference is appropriate, and

recommends that the district court approve the adverse inference as requested.

## DISCUSSION

I. Plaintiffs' Expenses

On January 28, 2013, the Court Ordered defendants to pay the reasonable attorneys' fees

and costs incurred by plaintiffs for an enumerated list of discovery-related activities, including

submitting their discovery letter motions to the Court and participating in the conferences

focused on procuring defendants' compliance in the discovery process. Moreover, the Court

Ordered defendants to reimburse plaintiffs for the cost of any phone calls, e-mail exchanges, and letters to defendants' counsel aimed at procuring defendants' compliance with discovery. Plaintiffs have submitted their time sheets and billing records setting out the costs incurred and the time they spent on the aforementioned items ("2/12 Let."), as well as an affidavit in support of these records ("Tai Aff.").

A. Legal Standard

When awarding attorneys' fees and costs incurred as a sanction under Rule 37, courts must determine whether such expenses are reasonable. See Pegoraro v. Marrero, No. 10 CV 00051, 2013 WL 55829, at *2-3 (S.D.N.Y. Jan. 4, 2013); Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic, No. 10 CV 05256, 2012 WL 5816878, at *2-3 (S.D.N.Y. Nov. 14, 2012); Short v. Manhattan Apartments, Inc., 286 F.R.D. 248, 255 (S.D.N.Y. 2012). In Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008), the Second Circuit "'abandon[ed]' the 'lodestar' approach to awarding attorney's fees," which was "the product of the attorney's usual hourly rate and the number of hours worked, which could then be adjusted by the Court to set 'the reasonable fee.'" Simmons v. New York City Transit Auth., 575 F.3d 170, 170, 175 (2d Cir. 2009) (citing in part Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 187)). The court instead held that when assessing whether claimed legal costs are reasonable, the court must determine the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay, "bear[ing] in mind all of the case-specific variables" that the courts have identified as relevant in setting a reasonable hourly rate. Id. at 172 (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 190).

However, the United States Supreme Court has subsequently spoken in favor of the lodestar method as the preferred approach for determining attorneys' fees in the context of a federal fee-shifting provision. See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 130 S. Ct. 1662 (2010). In explaining its preference for the lodestar approach, the Court noted both that the lodestar approach has "achieved dominance in the federal courts" and that it has "become the guiding light of our fee-shifting jurisprudence." Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662 at 1672 (quoting Gisbrecht v. Barnhart, 535 U.S. 789, 801 (2002)). The Court also explained that the lodestar method is preferable because it results in more accurate attorneys' fee awards and because it "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." Id.

Nonetheless, the Supreme Court did not explicitly reject the Second Circuit's approach and Arbor Hill has not yet been revisited by the Circuit in light of Perdue. Thus, the vast majority of courts in this Circuit still cite the approach articulated in Arbor Hill.[4] Accordingly, this Court applies the Arbor Hill factors in determining the "presumptively reasonable fee," which in this case, produces the same recommended fee as under a traditional lodestar analysis.

In order to calculate the presumptively reasonable fee, the Court must first determine a

---

[4]The Court conducted a search of decisions in New York's district courts, and found that the vast majority of decisions issued since Perdue still rely upon Arbor Hill. See, e.g., S.M. v. Taconic Hills Cent. School Dist., No. 09 CV 1238, 2012 WL 3929889, at *4 (N.D.N.Y. Sept. 10, 2012); Greathouse v. JHS Sec., Inc., No. 11 CV 7845, 2012 WL 3871523, at *9 (S.D.N.Y. Sept. 7, 2012); Archbold v. Tristate ATM, Inc., No. 11 CV 5796, 2012 WL 3887167, at *6-7 (E.D.N.Y. Sept. 7, 2012). But see Harris v. Fairweather, No. 11 CV 2152, 2012 WL 3956801, at *7, n.21 (S.D.N.Y. Sept. 10, 2012) (analyzing the request for attorneys' fees under the lodestar approach, noting that "[t]he Supreme Court's Perdue opinion appears to cast doubt on the viability of the Second Circuit's 2008 opinion in Arbor Hill, which relied on the Johnson factors").

reasonable hourly rate for the legal services performed.  Arbor Hill Concerned Citizens
Neighborhood Ass'n v. County of Albany, 522 F.3d at 190.  "The most useful starting point for
determining the amount of a reasonable fee is the number of hours reasonably expended on the
litigation multiplied by a reasonable hourly rate.  This calculation provides an objective basis on
which to make an initial estimate . . . ." Id. at 186 (quoting Hensley v. Eckerhart, 461 U.S. 424,
433 (1983) (abrogated on other grounds by Gisbrecht v. Barnhart, 535 U.S. at 795-815)).
Additionally, the Second Circuit has adopted the following factors, inter alia, to guide the inquiry
as to what constitutes a reasonable hourly rate:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the skill required to perform the legal service
> properly; (4) the preclusion of employment by the attorney due to
> acceptance of the case; (5) the customary fee; (6) whether the fee is
> fixed or contingent; (7) the time limitations imposed by the client
> or the circumstances; (8) the amount involved and the results
> obtained; (9) the experience, reputation, and ability of the
> attorneys; (10) the "undesirability" of the case; (11) the nature and
> length of the professional relationship with the client; and (12)
> awards in similar cases.

Id. at 187 n.3 (citing Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 717-719 (5th Cir.
1974) abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989)).  A number of
recent cases have applied some of these factors when awarding attorneys' fees.  See Zhao Hui
Chen v. Jin Holding Grp., Inc., No. 10 CV 414, 2012 WL 279719, at *3-5 (S.D.N.Y. Jan. 31,
2012); see also Cruz v. Henry Modell & Co., No. 05 CV 1450, 2008 WL 905351, at *3
(E.D.N.Y. 2008).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise
> and capacity of the client's other counsel (if any), the resources

5

> required to prosecute the case effectively . . ., the timing demands
> of the case, whether the attorney might have an interest
> (independent of that of his client) in achieving the ends of the
> litigation or might initiate the representation himself, whether the
> attorney might have initially acted pro bono . . ., and other returns
> (such as reputation, etc.) the attorney might expect from the
> representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184.

In determining the appropriate rate to be charged, the Second Circuit has indicated that courts may consider evidence of prevailing rates for similar services beyond the fee application itself. See Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989). In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged. See Cruz v. Local Union No. 3, 34 F.3d 1148, 1160 (2d Cir. 1994) (noting that "[a] district court's 'choice of rates [is] well within [its] discretion'") (quoting Cabrera v. Jakobovitz, 24 F.3d 372, 393 (2d Cir.), cert. denied, 513 U.S. 876 (1994)). To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984).

Indeed, the Second Circuit has held that in calculating the presumptively reasonable fee, "courts 'should generally use the hourly rates employed in the district in which the reviewing court sits.'" Simmons v. New York City Transit Auth., 575 F.3d at 174 (holding that when awarding attorneys' fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located) (citations omitted).

6

B. <u>Analysis</u>

    1. <u>Rates Requested</u>

    In this case, plaintiffs are represented by the Urban Justice Center (the "Center"), which is located at 123 Williams Street, New York, New York 10038. In accordance with <u>New York State Association for Retarded Children, Inc. v. Carey</u>, the Center submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, along with the name of the attorney and a description of services performed. 711 F.2d 1136, 1148 (2d Cir. 1983). (<u>See</u> 2/12 Let. at 7-14; Tai Aff. ¶ 9). Plaintiffs seek attorneys' fees in the amount of $48,115, representing services performed by David Colodny, Esq., Edward Tuddenham, Esq., Amy Tai, Esq., and Carmela Huang, Esq., in connection with plaintiffs' efforts to obtain discovery in this action. (Tai Aff. ¶¶ 7, 8, 10).

    Mr. Colodny, who has practiced law since 1995, requests an hourly rate of $325. (2/12 Let. at 4; Tai Aff. ¶ 13). According to plaintiffs, Mr. Colodny graduated *cum laude* from Georgetown University Law Center in 1995, and he was an associate at the law firm of Patton Boggs, LLP in Washington D.C. from 1995 to 2000. (<u>Id.</u>) From 2001 until 2005, Mr. Colodny worked for the D.C. Employment Justice Center, where he served for some time as the Director of Legal Services. (<u>Id.</u>) From 2005 until the present, Mr. Colodny has been at the Center as a Senior Staff Attorney and most recently as a Supervising Attorney. (<u>Id.</u>) According to plaintiffs, since 2001, "almost all of Mr. Colodny's work has been representing and advising low-wage workers. Mr. Colodny has represented low-wage workers in more than two dozen wage-hour cases in the Eastern and Southern Disctricts." (<u>Id.</u>) Mr. Colodny served as an adjunct professor at the New York University School of Law in 2008-2010, and he has been a panelist at CLE

7

programs on wage and hour laws at the D.C. Bar and the National Employment Lawyers'

Association/New York. (Id. at 4-5). Defendants challenge plaintiffs' description of Mr.

Colodny's qualifications. Defendants claim that it appears that Mr. Colodny did not work full

time until August 2001, and that he was a Senior Staff Attorney rather than a Supervising

Attorney during the times relevant to this motion. (Defs.' Mem.[5] at 3). Defendants request that

Mr. Colodny's rate be reduced to $250 per hour. (Id. at 4).

The Court finds that a rate of $325 per hour for Mr. Colodny's legal work in this case is

reasonable. Mr. Colodny is well-qualified to represent the plaintiffs in this case, and the nature

of the work in this matter has been somewhat less straightforward than many lawsuits due largely

to defendants' lack of cooperation. Mr. Colodny has at least eleven years experience working

full time to represent low-wage workers and several more years working in private practice.

Further, the requested rate is within the range generally awarded in this jurisdiction, and lower

than the rates paid to law firm partners with comparable experience. See Jemine v. Dennis, No.

08 CV 3072, 2012 WL 4482769, at *23 (E.D.N.Y. Sept. 28, 2012) (awarding a rate of $375 per

hour to a partner with 18 years of experience in civil rights and employment litigation in a

"relatively straightforward" FLSA class action suit in which defendants had defaulted); see also

Janus v. Regalis Const., Inc., No. 11 CV 5788, 2012 WL 3878113 (E.D.N.Y. July 23, 2012),

report and recommendation adopted, 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012) (finding that

courts in this district typically find that prevailing hourly rates for law firm partners range

between $300 and $400); Rodriguez v. Pressler & Pressler, L.L.P., No. 06 CV 5103, 2009 WL

---

[5]Citations to "Defs.' Mem." refer to the response to the Tai Aff., submitted by both sets of
defendants on Feburary 20, 2013.

689056 (E.D.N.Y. Mar. 16, 2009) (awarding attorney's fees at a rate of $450 per hour for an

experienced attorney in an FDCPA case); <u>Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.</u>, No.

04 CV 2195, 2006 WL 3681138 (E.D.N.Y. Dec. 11, 2006) (approving a rate of $420 per hour).

    Mr. Tuddenham, a private attorney with over thirty years of experience in civil rights

litigation, who is assisting the Center with the litigation of this case, requests an hourly rate of

$400. (2/12 Let. at 4-5; Tai Aff. ¶ 13).  Plaintiffs state that Mr. Tuddenham graduated *magna*

*cum laude* from Harvard Law School in 1978. (2/12 Let. at 5)  For twelve years, he worked for

Legal Services funded organizations representing migrant farm workers in civil rights and wage

claims, and for the past twenty-three years he has been in private practice representing foreign

visa workers and other low wage workers. (<u>Id.</u>)  According to plaintiffs, Mr. Tuddenham is a

member of the New York bar, and in his most recent fee award in the Southern District of New

York, he was paid at the rate of $600 per hour in an FLSA action.  (<u>Id.</u>)  Although defendants

argued that plaintiffs did not provide sufficiently specific information regarding Mr.

Tuddenham's recent legal work and the case in which he was awarded a rate of $600 per hour

(Defs.' Mem. at 4), plaintiffs have since provided a long list of cases recently handled by Mr.

Tuddenham and the citation for the aforementioned case. (Pls.' Reply[6] at 4).  The Court is

satisfied with the materials provided by plaintiffs in support of their fee request for Mr.

Tuddenham, and finds that in this district, a rate of $400 per hour is a reasonable award in an

FLSA case for an attorney with Mr. Tuddenham's level of expertise and experience.

    Plaintiffs request a rate of $200 per hour for the legal work performed by Amy Tai. (2/12

Let. at 4).  Ms. Tai graduated *cum laude* from American University Washington College of Law

---

[6]Citations to "Pls.' Reply" refer to plaintiffs' letter dated February 25, 2013.

in 2008, and she has been a member of the New York bar since 2009.  (Id. at 5; Tai Aff. ¶ 13).

Plaintiffs claim that, from 2008 to 2009, Ms. Tai was a staff attorney at the Second Circuit Court

of Appeals, and in 2009 she joined the Center where she has focused on employment and civil

rights litigation involving low-wage workers.  (Id.)  According to plaintiffs, in 2012 Ms. Tai was

part of a team that successfully litigated a case on behalf of a domestic worker trafficked from

India that resulted in a judgment of more than $1.4 million dollars.  (Id.)  Defendants claim that

Mr. Tai should be considered a junior first or second year associate for the purposes of this

motion and granted a rate of $125 per hour.  (Defs.' Mem. at 4).

Considering her level of experience, the level of complexity of this case, and rates that

have been awarded in this district, the Court finds that Ms. Tai's requested rate of $200 per hour

is reasonable.  Jemine v. Dennis, 2012 WL 4482769, at *23 (awarding a rate of $250 per hour to

an associate with nine years of experience and $150 to an associate with less than two years of

experience who had not yet sat for the bar when she worked on the case); see also La Barbera v.

Les Sub-Surface Plumbing, Inc., No. 03 CV 6076, 2006 WL 3628024, at *8 (E.D.N.Y. Dec. 11,

2006) (finding that $250 was a reasonable rate for an associate with six years of experience given

the relatively simple nature of the action).

Finally, plaintiffs request an hourly rate of $175 for the work of Carmela Huang.  (2/12

Let. at 4).  Ms. Huang is a 2007 graduate of Fordham University School of Law, and she has

been a member of the New York bar since 2008.  (Id. at 5; Tai Aff. ¶ 13).  According to

plaintiffs, Ms. Huang clerked for United States Magistrate Judge Lois Bloom and later

volunteered with a workers' rights organization that assists low-wage Chinese workers.  (Id.)

Plaintiffs claim that, since 2008, Ms. Huang has "at various times served as either a staff or

volunteer attorney" for the Center, where she has worked almost exclusively on employment related litigation on behalf of low-wage workers. (Id.) Defendants claim that Ms. Huang should be considered a junior first year associate and awarded only $100 per hour. (Defs.' Mem. at 4).

Considering her relevant practical experience, a rate of $175 is reasonable for Ms. Huang's legal work in this case. See Jemine v. Dennis, 2012 WL 4482769, at *23; Gunawan v. Sake Sushi Rest., No. 09 CV 5018, 2012 WL 4369754, at *12 (E.D.N.Y. Sept. 24, 2012) (awarding an hourly rate of $275 for an associate with five years of relevant experience and a rate of $225 for an associate with three years of relevant experience in a "relatively straightforward" FLSA case).[7]

Ms. Huang and Ms. Tai have also spent a small amount of time on non-legal work in this case. Specifically, Ms. Huang spent two hours "copying, scanning, [and] collating motion papers" on May 7, 2012. (2/12 Let. at 11). Ms. Tai spent an unspecified amount of time

---

[7]To the extent that defendants argue that plaintiffs' attorneys' fees should be reduced because this case is not complex or "undesirable" (see Defs.' Mem. at 4), the Court finds this argument to be without merit. Although, as defendants point out, only two plaintiffs remain in this case, the extent and difficulty of the work incurred by plaintiffs' counsel in seeking discovery was not dependent on the number of plaintiffs involved. Moreover, defendants' evasive tactics have increased the level of complexity and the undesirability of this case. Defendants' argument that plaintiffs' fees should be reduced because "the customary fee is a contingency fee" is similarly unavailing. (Id.) Whether or not plaintiffs' attorneys are working on a contingency fee basis is irrelevant to the Court's determination of a reasonable fee award. See Orient Overseas Container v. Crystal Cove Seafood, No. 10 CV 3166, 2012 WL 6720615, *9 (S.D.N.Y. Dec. 28, 2012) (finding that the appropriate attorney's fee is "the market rate for the attorney's services by clients who can afford them, not the client's perceived ability to pay. Otherwise pro bono attorneys could never recover fees"). Finally, although defendants complain that plaintiffs have submitted only the affidavit of Ms. Tai in support of their motion for fees (Defs.' Mem. at 3), the Court directed plaintiffs to submit one affidavit on behalf of all of their attorneys. (See February 13, 2013 Docket Entry).

11

collating or September 3, 2010.[8] (Id. at 7).  With respect to this non-legal work, the Court finds that plaintiffs' counsel should be compensated at a rate of $85 per hour, commensurate with the rate typically awarded to paralegal assistants in this district.  See Siracuse v. Program for the Dev. of Human Potential, No. 07 CV 2205, 2012 WL 1624291, at *30 (E.D.N.Y. Apr. 30, 2012) (awarding a rate of $85 per hour to a paralegal in an employment discrimination case); Brady v. Wal-Mart Stores, Inc., No. 03 CV 3843, 2010 WL 4392566, at *5 (E.D.N.Y. Oct. 29, 2010) (awarding a rate of $100 per hour to paralegals in an employment discrimination case and observing that fee awards in this district in recent years have ranged from $70 to $100 for paralegal assistants); Shim v. Millennium Group, No. 08 CV 4022, 2010 WL 2772493, at *3-4 (E.D.N.Y. June 21, 2010), report and recommendation adopted, 2010 WL 2772342 (E.D.N.Y. July 12, 2010) (approving a rate of $80 for paralegal assistants in an FLSA case).

In sum, based on the qualifications of plaintiffs' counsel, the type and level of complexity of this case, and the Court's knowledge of the rates generally charged by similarly experienced attorneys working on comparable matters in the Eastern District, the Court finds that the rates requested for the legal work performed by plaintiffs' attorneys are reasonable and respectfully recommends that the requested hourly rates be approved.  The Court also finds that Mr. Huang and Ms. Tai should be awarded a rate of $85 per hour for the small amount of non-legal work reported.

---

[8] Ms. Tai's time records specify that she spent 3 hours on "final edits" and to "prepare" and "collate" a letter motion and exhibits regarding defendants' discovery deficiencies.  It is unclear from the time records what portion of the time was spent collating.  The Court finds that 1 hour of this time should be considered non-legal work and compensated at a lower rate.

2. Hours billed

In reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) (citing Hensley v. Eckerhart, 461 U.S. at 433-35, 440); see also Rotella v. Board of Educ., No. 01 CV 434, 2002 WL 59106, at *3-4 (E.D.N.Y. Jan. 17, 2002) (applying percentage reduction to fees of several attorneys for excessive and redundant billing); Quinn v. Nassau City Police Dep't., 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and redundant time); Perdue v. City Univ. of N.Y., 13 F. Supp. 2d 326, 346 (E.D.N.Y. 1998) (imposing a 20% reduction for redundancy); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that the "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work" and deducting 40% of plaintiffs' lawyer's hours).

Similarly, courts routinely apply across-the-board reductions for vague entries, see, e.g., In re Olson, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989) (reducing fees based on lack of specificity in description of work performed); DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing fee request by 40% for, inter alia, insufficient descriptions of work performed), rev'd & remanded on other grounds, 38 F.3d 651 (2d Cir. 1994); Cabrera v. Fischler, 814 F. Supp. 269, 290 (E.D.N.Y. 1993) (reducing fees by 30% for vague entries with insufficient descriptions of work performed), rev'd in part & remanded on other grounds, 24 F.3d 372 (2d Cir.), cert. denied, 513 U.S. 876 (1994); Nu-Life Constr. Corp. v. Board of Educ., 795 F. Supp. 602, 607-08 (E.D.N.Y. 1992) (reducing fees by 30% due in part to lack of specificity in descriptions of work performed); Meriwether v. Coughlin, 727 F. Supp. 823, 827 (S.D.N.Y.

13

1989) (finding an overall reduction of 15% warranted based on vague descriptions of work performed).

Based on the contemporaneous billing records submitted to the Court in connection with the instant motion, the Center seeks compensation for 34.0 hours of work by Mr. Colodny, 3.7 hours of work by Mr. Tuddenham, 98.3 hours of work by Ms. Tai, and 91.0 hours of work by Ms. Huang.[9]  (Tai Aff. ¶ 11).  Plaintiffs explain that there was additional time spent on discovery-related issues, but that this time was not included in plaintiffs' fee request either because it was recorded together with other time spent working on issues not related to this sanction motion, considered duplicative, or not recorded contemporaneously with sufficient detail.  (2/12 Let. at 13; Pls.' Reply at 5).  Although defendants claim that plaintiffs' time records are "'vague as to the nature of the work done'" (Defs.' Mem. at 4), the billing statements submitted by the Center show the work performed by plaintiffs' lawyers in connection with defendants' discovery failures with reasonable specificity, including drafting and revising discovery motions, reviewing defendants' discovery responses, and preparing for conferences with the Court.  (See 2/12 Let. at 7-14).  Defendants contend that plaintiffs' attorneys have spent

_____

[9]Plaintiffs have provided a breakdown of the hours spent working on discovery issues for each set of defendants.  Plaintiffs explain that, "where hours spent on both sets of defendants could not be split with precision (such as the drafting of plaintiffs' motion for sanctions and other court appearances), plaintiffs have allocated half of the time to the Perfect Team defendants and the remaining half to the Ji Shiang defendants." (2/12 Let. at 3).  For the work done by Mr. Colodny, plaintiffs allocate 16.65 hours to the Perfect Team defendants and 17.35 hours to the Ji Shiang defendants; for Mr. Tuddenham's work, plaintiffs allocate 1.85 hours to each set of defendants; for Mr. Tai, plaintiffs allocate 43.35 hours of work for the Perfect Team defendants and 54.95 hours for the Ji Shiang defendants; and for Ms. Huang's work, plaintiffs allocate 45.5 hours to each set of defendants.  (Id.)  As addressed above, 2 hours of Ms. Huang's reported time and 1 hour of Ms. Tai's reported time was spent on non-legal work in this case.  (See discussion Part I.B.1).  Plaintiffs allocate half of this time to each set of defendants.  (2/12 Let. at 7, 11)

excessive time working on this case and that they have performed unnecessary and duplicative work. (Defs.' Mem. at 4-7). Accordingly, defendants request that plaintiffs' hours be cut in half. (Id. at 7). As one example, defendants complain that, where one of plaintiffs' attorneys has recorded a meeting with another one of plaintiffs' attorneys, the meeting is not also recorded on the second attorney's time sheet. (Id. at 4-5). Plaintiffs' billing records show that some of the meetings between plaintiffs' attorneys are recorded consistently on both attorneys' time sheets, while others are uncorroborated. In light of plaintiffs' representation that some time spent on discovery issues was voluntarily excluded from the billing records, the Court finds that a small discounted rate of 10% should be applied to the time spent on uncorroborated meetings.[10]

---

[10]Mr. Tuddenham reported one uncorroborated meeting with Ms. Tai on September 2, 2010, lasting .5 hours. Accordingly, the Court deducts .05 hours from Mr. Tuddenham's billed hours, allocated equally to each set of defendants. Ms. Huang also reported just one uncorroborated meeting with Mr. Colodny on April 4, 2012, lasting .5 hours. The Court deducts .05 hours from Ms. Huang's billed hours, allocated equally to each set of defendants. Mr. Colodny reported three uncorroborated meetings: the first is recorded as having been held with Ms. Tai on January 11, 2011 for .8 hours; the other two were with Ms. Huang on May 3, 2012 and July 9, 2012. Mr. Colodny's latter two entries do not distinguish between the time spent on his meetings with Ms. Huang and the time spent on other work documented in the same entries. Although Mr. Colodny reports that he spent 3.7 hours on his meetings with Ms. Huang and on other work, the Court allocates half of this time to the uncorroborated meetings. Thus, the Court finds that Mr. Colodny spent 3.05 hours on uncorroborated meetings, and the Court discounts Mr. Colodny's billed hours by .305 hours, allocated equally between the two sets of defendants. Finally, Ms. Tai recorded several uncorroborated meetings as follows: On dates ranging from August 25, 2010 to June 13, 2011, Ms. Tai recorded 6.2 hours worth of meetings with Mr. Colodny on issues related to both sets of defendants; on September 23, 2010, she recorded a .3 hour long meeting with Mr. Tuddenham to discuss issues related to the Ji Shiang defendants; on January 7, 2011, Ms. Tai recorded a 1 hour meeting with Mr. Colodny regarding the Ji Shiang defendants; and on April 26, 2011, she recorded a .3 hour meeting with "co-counsel" regarding both sets of defendants. Thus, Ms. Tai reported 3.25 hours of uncorroborated meetings regarding the Perfect Team defendants and 4.55 hours of uncorroborated meetings regarding the Ji Shiang defendants. Accordingly, the Court discounts .325 hours of time billed by Ms. Tai from the amount owed by the Perfect Team defendants and .455 hours of time billed by Ms. Tai from the amount owned by the Ji Shiang defendants.

15

Having carefully examined the billing records, the Court finds that the number of hours charged in this matter for the remaining legal work is well within the reasonable range, given the amount of work performed. Although the number of hours charged appears high, defendants' non-compliance has been pervasive, and plaintiffs have filed several lengthy motions and participated in several conferences focused on attempting to obtain routine discovery from defendants. Indeed, in its January 28, 2013 Order, the Court listed nine categories of expenses that plaintiffs have had to incur in connection with defendants' failure to provide discovery. (Ord. at 24-25). The Court also Ordered defendants to pay for plaintiffs' "numerous phone calls, e-mail exchange[s], and letters to defendants' counsel aimed at procuring defendants' compliance." (Id. at 25). Plaintiffs' records set forth in detail how their time was spent, and they have not attempted to bill for excessive or redundant time. Moreover, plaintiffs have indicated that they spent additional time on discovery-related issues, which was not included in plaintiffs' fee request. (2/12 Let. at 13; Pls.' Reply at 5).

Accordingly, based on the hourly rates set forth above and the hours billed on this matter, the Court respectfully recommends that the Perfect Team defendants be ordered to pay plaintiffs $22,507.31 in fees and the Ji Shiang defendants be ordered to pay plaintiffs $25,028.81 in fees.[11]

3. Costs

Pursuant to the Court's January 28, 2013 Order, plaintiffs have requested $224.75 in costs

---

[11]The total fee amounts were calculated by multiplying the hourly rate for each of plaintiffs' attorneys by the number of hours billed, taking into account any deductions for uncorroborated meetings or non-legal work, and then totaling the amount for each set of defendants.

incurred in connection with defendants' failure to produce discovery in this case.[12]  (Tai Aff. ¶

15).  Plaintiffs explain that these expenses were incurred by Mr. Tuddenham traveling to and

from Washington D.C., where he was living at the time, in order to attend the Court's July 30,

2010 conference.[13]  (Id.)  The Court finds plaintiffs' requested expenses to be reasonable and

respectfully recommends that each set of defendants be Ordered to pay plaintiffs $112.38 in

costs.

### 4. Summary of the Court's Calculations

| Attorney | Tai | | Huang | | Colodny | | Tuddenham | |
|---|---|---|---|---|---|---|---|---|
| Rate - Legal | $200 | | $175 | | $325 | | $400 | |
| Rate - NonLegal | $85 | | $85 | | NA | | NA | |
| Defendants | PT | JS | PT | JS | PT | JS | PT | JS |
| Hours Claimed | 43.35 | 54.95 | 45.5 | 45.5 | 16.65 | 17.35 | 1.85 | 1.85 |
| Deduction | 0.325 | 0.455 | 0.025 | 0.025 | 0.1525 | 0.1525 | 0.025 | 0.025 |
| Non-Legal | 0.5 | 0.5 | 1 | 1 | NA | NA | NA | NA |
| Legal | 42.525 | 53.995 | 44.475 | 44.475 | 16.4975 | 17.1975 | 1.825 | 1.825 |
| Total | | $8,547.50 | $10,841.50 | $7,868.13 | $7,868.13 | $5,361.69 | $5,589.19 | $730.00 | $730.00 |

| | Fees | Costs | Total |
|---|---|---|---|
| Perfect Team | $22,507.31 | $112.38 | $22,619.69 |
| Ji Shiang | $25,028.81 | $112.38 | $25,141.19 |

---

[12]Specifically, $212 was spent on an Amtrak train to New York City and $12.75 was spent on parking.  Plaintiffs allocate 50% of these expenses to each set of defendants.

[13]Defendants argue that plaintiffs have not explained why it was necessary for Mr. Tuddenham to attend this meeting and that, in any event, Mr. Tuddenham owned a home in New York at the time of the conference. (Defs.' Mem. at 7).  Plaintiffs explain that Mr. Tuddenham came to the conference to provide his expertise regarding the collective action notice and that, despite owning a home in New York, he did not live in or maintain an office in New York at the time of the conference. (Pls.' Reply at 5).

17

II. Adverse Inference

The Court's January 28, 2013 Order found that an adverse inference is an appropriate sanction that would help to mitigate the prejudice caused by defendants' conduct given the pervasive nature of defendants' defiance in this case. The Court permitted plaintiffs to propose an adverse inference that would "appropriately account for defendants' failure to produce records." Accordingly, plaintiffs have proposed that the Court make the following adverse inference:

> Each of the individual defendants, Chun Kit Cheng, Jia Li Wang and Fen Lin, jointly owned and operated the Guang Zhou Restaurant, and were plaintiffs' "employers" within the meaning of the Fair Labor Standards Act and New York Labor Law, during the entire time of the restaurant's operation, from June 2007 through February 2011.

(2/12 Let. at 1). In support of their suggested adverse inference, plaintiffs claim that "[o]ne of the primary themes of the defendants' non-compliance relates to their efforts to hide information about the ownership of the restaurant and the relationship between Perfect Team Corp. and Ji Shiang, Inc." (Id. at 2). Plaintiffs contend that defendants were solely or primarily in possession of "the evidence that would have allowed plaintiffs to discern who owned and operated the restaurant, and the relationship between the two corporations." (Id.)

Plaintiffs contend that, because defendants "failed to search for responsive documents, including electronic documents, and abandoned the restaurant's computer," plaintiffs can not list every type of document that might have been produced if not for defendants' failure to cooperate with discovery in this case. (Id. at 3). Nonetheless, plaintiffs cite six examples of defendants' non-compliance with their discovery obligations that have affected plaintiffs' ability to discern ownership of the Restaurant and the relationship between the defendants. (Id. at 2). Specifically,

18

plaintiffs claim that:

> 1) Defendants did not produce documents showing that Perfect Team and Ji Shiang
>
> entered into a lease assignment agreement dated April 30, 2009 with Perfect Team
>
> defendant Cheng as the personal guarantor for Ji Shiang's lease. Instead, according to
>
> plaintiffs, Ji Shiang produced a copy of the subsequent lease agreement dated June 2009.
>
> Plaintiffs also claim that Ji Shiang defendant Lin failed to produce a 2007 license
>
> agreement showing that Lin had the power to sign documents on behalf of Perfect Team.
>
> Plaintiffs claim that they may not ever have learned about these documents if not for the
>
> cooperation of non-party David Weinberger, the property manager for the Restaurant
>
> premises.[14]
>
> 2) Defendants testified untruthfully about their participation in the transfer of the
>
> Restaurant. Plaintiffs cite Perfect Team defendant Wang's testimony that she was
>
> unaware that defendant Lin would take over the Restaurant. Plaintiffs claim that
>
> documents obtained by subpoena contradict this testimony by showing that defendant
>
> Wang helped open one of Ji Shiang's bank accounts. Plaintiffs also claim that Lin
>
> testified untruthfully about their participation in the transfer of the Restaurant.[15]

---

[14]In its previous Order on plaintiffs' motion for sanctions, the Court found that the Ji Shiang defendants' failure to produce documents related to the lease and assignment of the Restaurant premises constituted a failure to comply with their discovery obligations. (Ord. at 20-21).

[15]The Court reviewed the testimony and documents cited by plaintiffs with respect to this claim in connection with its previous Order and found that the "myriad inconsistencies in the defendants' testimony call into question their credibility and support a finding of bad faith on the part of the defendants." (Ord. at 12, 23).

3) Defendants did not produce documents showing ownership of Perfect Team or who received distributions of profits.  According to plaintiffs, Perfect Team also refused to answer an interrogatory seeking the identity of their accountant.

4) Defendants failed to produce documents concerning the financial condition, assets, liabilities, net worth, annual sales, and expenses of Perfect Team that would have shown that the Restaurant was a profitable, multi-million dollar business that Perfect Team defendants Chen and Wang would not have abandoned.

5) Defendants did not produce records showing how much Perfect Team paid to Wang or Lin, and these records may have supported plaintiffs' contention that Wang and Lin were upper management or owners of the Restaurant.

6) The Ji Shiang defendants refused to allow plaintiffs to conduct an inspection of the Restaurant, during which plaintiffs intended to document that the equipment being used by Ji Shiang was identical to that used by Perfect Team.[16]

In response, defendants claim that plaintiffs' proposed adverse inference is a conclusion of law, "directly contrary to findings by Judge Eric N. Vitaliano in his Memorandum and Order [on plaintiffs' motion for attachment] dated August 11, 2011." (Defs.' Mem. at 1).  Defendants claim that Judge Vitaliano found that plaintiffs had presented:

> no reliable testimony nor documentary evidence to contradict
> defendants' account of the progression of ownership and control of
> the restaurant's assets. . .Nor do they present any proof one way or
> another that Perfect Team's surrender of the restaurant's fixtures,
> furniture and equipment to the landlord in order to terminate the

---

[16]The Court has previously found that the Ji Shiang defendants flouted a Court Order by failing to cooperate with plaintiffs to arrange for an inspection of the Restaurant.  (Ord. at 21-22).

> restaurant's lease was anything but arm's length, much as Ji
> Shiang's subsequent surrender of the lease to the landlord. . .
> appears to have been.

Id. at 1-2.  Plaintiffs argue that defendants' reliance on Judge Vitaliano's decision denying

plaintiffs' motion for attachment is inappropriate and misleading.  (Pls.' Reply at 2).  According

to plaintiffs, when they filed their motion for attachment of defendants' assets in February 2011,

plaintiffs had not yet deposed defendants and were not yet in possession of the subpoenaed

documents from David Weinberger and Citibank that plaintiffs cited in their motion for

sanctions.  (Id.)

    Defendants also reiterate the argument that plaintiffs have failed to show that defendants

destroyed or withheld any evidence in their control.  (Defs.' Mem. at 2).  According to

defendants, plaintiffs have failed to discuss the "existence of evidence, control of evidence,

destruction or withholding of evidence, culpability, and relevance of the evidence."  (Id.)

Defendants also claim that plaintiffs' proposed inference is "based purely on speculation."  (Id.)

For example, defendants argue that plaintiffs have shown nothing to substantiate their claim that

Perfect Team was a profitable business that would not have been abandoned voluntarily.  (Id.)

    The defendants' arguments against plaintiffs' proposed adverse inference are

unpersuasive.  As plaintiffs point out, the record upon which Judge Vitaliano based his decision

on the motion for attachment was less developed than it is now.  Moreover, plaintiffs need not

conclusively prove the facts that plaintiffs seek to establish in their proposed adverse inference;

otherwise, the purpose of an adverse inference would be completely undermined.  It is clear,

based on the record as it currently exists, that defendants' failure to produce evidence relevant to

proof of the issue of ownership of the Restaurant and the relationship between the defendants has

prejudiced the plaintiffs. Plaintiffs' proposed adverse inference is appropriate and will help mitigate the damage caused by defendants' failure to comply with their discovery obligations in this case. See Treppel v. Biovail Corp., 249 F.R.D. 111, 120 (S.D.N.Y. 2008) (holding that "the spoliation of evidence 'relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction'").

Accordingly, the Court respectfully recommends that plaintiffs' suggested adverse inference be approved and that the designated facts as claimed by plaintiffs be established for purposes of this action.


## CONCLUSION

For the reasons stated above, the Court respectfully recommends that the Perfect Team defendants be Ordered to pay plaintiffs a total of $22,619.69, representing $22,507.31 in attorneys' fees and $112.38 in costs. The Court also respectfully recommends that the Ji Shiang defendants be Ordered to pay plaintiffs $25,141.19, representing $25,028.81 in attorneys' fees and $112.38 in costs. Finally, the Court respectfully recommends that the facts regarding ownership of the Restaurant and defendants' relationship as designated by plaintiffs be considered established for the purposes of this action.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

22

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       March 8, 2013

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

23