UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LI RONG GAO, et al.,

              Plaintiffs,

  -against-

PERFECT TEAM CORPORATION d/b/a GUANG ZHOU RESTAURANT, et al.,

              Defendants.

No. 10-CV-1637 (ENV) (CLP)

**Plaintiff's Rule 56.1 Statement**

       Plaintiff Li Rong Gao, in support of her motion for summary judgment seeking relief for (i) federal and New York state minimum wage violations, (ii) federal and New York state overtime violations, and (iii) New York state spread of hours pay violations, respectfully submits the following statement of material facts pursuant to Local Rule 56.1 putting forth those facts for which there is no genuine issue to be tried.

### PLAINTIFF'S UNANSWERED REQUESTS FOR ADMISSION

    1.    Pursuant to Fed. R. Civ. P. 36, Plaintiff served Requests for Admission on Defendants Perfect Team Corporation ("Perfect Team"), Chun Kit Cheng ("Cheng"), and Jia Li Wang ("Wang"), (collectively, "Perfect Team Defendants") on June 25, 2010. *See* Exhibit ("Ex.") A (hereafter "Perfect Team Admis.")); Ex. B (hereafter "Wang Admis."); and Ex. C (hereafter "Cheng Admis."), attached to accompanying declaration of David A. Colodny ("Colodny Decl.").

1

2. None of Defendants Perfect Team, Cheng or Wang ever responded to the Plaintiff's Requests for Admission. Colodny Decl. at ¶ 4.

3. The Perfect Team Defendants' failure to respond to the Requests for Admission was noted several times in filings made with the Court. *See, e.g.*, ECF No. 31 at 1-2 (Pls.' Sept. 3, 2010 letter to the Court); ECF No. 185 at 8 (Pls.' Mem. of Law in Supp. of their Mot. for Sanctions).

## OTHER PROCEDURAL HISTORY

4. Defendants Perfect Team, Cheng and Wang's initial disclosures made pursuant to Rule 26(a)(1)(A)(i) identify no persons who may testify in support of defendants' claims or defenses. Colodny Decl., Ex. D. None of the Perfect Team Defendants ever supplemented these disclosures. Colodny Decl. at ¶ 5.

5. Defendant Feng Lin and Ji Shiang Inc.'s initial disclosures made pursuant to Rule 26(a)(1)(A)(i) identify no persons who may testify in support of defendants' claims or defenses other than Feng Lin. Colodny Decl., Ex. E. Neither Feng Lin nor Ji Shiang, Inc. ("Ji Shiang") ever supplemented these disclosures. Colodny Decl. at ¶ 6.

## THE PARTIES

6. Plaintiff Li Rong Gao worked at Guang Zhou Restaurant ("the Restaurant") from April 29, 2008 until approximately June 1, 2009. First Am. Comp. at ¶ 7, ECF No. 29; Answer to First Am. Compl. by Perfect Team Defs. at ¶ 7, ECF No. 64; Colodny Decl., Ex. H (Wang Dep. at 139:2-16); Affidavit of Li Rong Gao ("Gao Aff.") at ¶ 2.

7. Plaintiff also worked at the Restaurant from August 2, 2010 to February 13, 2011. Gao Aff. at ¶ 16; Colodny Decl., Ex. M (Ji Shiang payroll records).

8. Plaintiff Gao's position throughout the time she worked at Guang Zhou Restaurant was waitress, also referred to as server. Colodny Decl., Ex. A (Perfect Team Admis. No. 7); Colodny Decl., Ex. C (Cheng Admis. No. 5); Colodny Decl., Ex. B (Wang Admis. No. 5); First Am. Compl. at ¶ 7, ECF No. 29; Perfect Team Defs.' Answer to First Am. Comp. at ¶ 7, ECF No. 64; Gao. Aff at ¶¶ 2, 16; Colodny Decl., Ex. F (Perfect Team's May 27, 2011 Resp. to Pls.' Interrog. No. 6).

9. Defendant Perfect Team was organized as a corporation and existed under the laws of the State of New York. Perfect Team Defs.' Answer to First Am. Compl. at ¶ 12, ECF No. 64; Colodny Decl., Ex. G (Certificate of Incorporation). Perfect Team was incorporated on or about March 8, 2006. ECF No. 64 at ¶ 12; Colodny Decl., Ex. G.

10. Perfect Team filed a Certificate of Dissolution with the New York Department of State on or about July 23, 2009. Colodny Decl., Ex. Y (Certificate of Dissolution); First Am. Compl. at ¶ 79, ECF No. 29; Perfect Team Defs.' Answer to First Am. Compl. at ¶ 79, ECF No. 64.

11. Perfect Team was an enterprise engaged in interstate commerce within the meaning of the FLSA in that it (i) had employees engaged in commerce or in the production of goods for commerce, or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person; and (ii) had an annual gross volume of sales of not less than $500,000. First Am. Compl. at ¶ 29, ECF No. 29; Perfect Team Defs.' Answer to First Am. Comp. at ¶ 29, ECF No. 64; Colodny Decl., Ex. A (Perfect Team Admis. Nos.1-2).

3

12. Perfect Team was the Plaintiff's "employer" within the meaning of the Fair Labor Standards Act for all periods in which she worked up to and including June 1, 2009. Colodny Decl., Ex. A (Perfect Team Admis. Nos. 3, 4, 6 and 7).

13. From at least approximately June 2007 until approximately June 2009, Perfect Team operated and was doing business as Guang Zhou Restaurant. Colodny Decl., Ex. A (Perfect Team Admis. Nos. 5, 21); Perfect Team Defs.' Answer to First Am. Compl. at ¶ 1, ECF No. 64.

14. Guang Zhou Restaurant was located at 136-59 37th Avenue, 2nd Floor, Flushing, NY 11354. Perfect Team Defs.' Answer to First Am. Comp. at ¶ 12, ECF No. 64.

15. The primary business of the Restaurant was the sale of Chinese food and drinks for consumption on the premises and take-out. First Am. Comp. at ¶ 36, ECF No. 29; Feng Lin Answer to First Am. Compl. at ¶ 36, ECF No. 33; Feb. 2011 Aff. of Gao at ¶ 3, ECF No. 70-3.

16. Defendant Cheng was the Plaintiff's "employer" within the meaning of the Fair Labor Standards Act in 2007, 2008 and 2009. Colodny Decl., Ex. C (Cheng Admis. Nos. 2, 4-5).

17. Defendant Cheng claims that he was the 71.5% owner and shareholder of Perfect Team from approximately June 2007 until approximately January 2008, and that he was the sole owner and shareholder from approximately January 2008 until approximately June 2009. Colodny Decl., Ex. F (Perfect Team May 2011 Translations of Supp. Resp. to Interrog. No. 1); Colodny Dec., Ex. F (Cheng May 2011 Translations of Supp. Resp. to Interrog. Nos. 1, 2).

18. From the time that Perfect Team was incorporated until the time that it was dissolved, Cheng served as the company's president. Colodny Decl., Ex. C (Cheng Admis. No. 1); Colodny Decl., Ex. I (Cheng Dep. at 51:22-23); Perfect Team Defs.' Answer to First Am. Comp. at ¶ 19, ECF No. 64.

19. Cheng admitted to being "the boss of the restaurant" from June 2007 to June 2009. Colodny Decl., Ex. I (Cheng Dep. at 73:2-4).

20. Cheng decided the amount of his own pay. Colodny Decl., Ex. I (Cheng Dep. at 89:16-90:10).

21. Cheng decided for himself what time he would begin and finish his work day. Colodny Decl., Ex. I (Cheng Dep. at 68:23-69:6, 88:17-19 ("my work time was all decided by myself in terms of the hours, the break time")).

22. From 2007 to 2009, Cheng worked at the restaurant approximately three to four days per week, from approximately 1:00 p.m. or 2:00 p.m. until 9:00 pm. or 10:00 p.m. Colodny Decl., Ex. I (Cheng Dep. at 67:11-25). Sometimes he arrived at work prior to 1:00 p.m. or worked after 10:00 p.m. Colodny Decl., Ex. I (Cheng Dep. at 68:1-8).

23. While Cheng denied interviewing or hiring employees at the Restaurant or having the authority to hire employees at the Restaurant (Colodny Decl., Ex. I (Cheng Dep. at 69:7-10, 72:8-10)), Defendant Wang testified that Cheng hired workers at the Restaurant prior to June 2009 (Colodny Decl., Ex. H (Wang Dep. at 58:11-15)). Cheng also denied having the authority to fire employees at the Restaurant prior to 2009 (Colodny Decl., Ex. I (Cheng Dep. at 74:21-23)), but indicated that he could have fired a manager but did not (Colodny Decl., Ex. I (Cheng Dep. at 76:16-22)). Defendant Lin also testified that Cheng asked Lin to interpret for him when he fired one or two dishwashers prior to June 2009. Colodny Decl., Ex. J (Lin Dep. at 118:18-119:18).

24. Cheng determined Wang's pay at the Restaurant prior to June 2009. Colodny Decl., Ex. H (Wang Dep. at 33:6-34:5).

5

25. Cheng determined Wang's responsibilities when she worked as a manager in the Restaurant from at least approximately January 2008 to June 1, 2009. Colodny Decl., Ex. H (Wang Dep. at 48:12-16) ("Q: Before June 1st, 2009, were there any documents that said what your job title was or what your responsibilities were at the restaurant? A: No, but whatever my husband said, that's it.").

26. Cheng decided, without consulting anyone else, to close the Restaurant on June 1, 2009. Colodny Decl., Ex. I (Cheng Dep. at 137:19-24).

27. Defendant Wang was Plaintiff's employer within the meaning of the Fair Labor Standards Act, in 2007, 2008 and 2009. Colodny Decl., Ex. B (Wang Admis. Nos. 1-4).

28. Defendant Wang was the Restaurant's manager beginning in approximately January 2008, following the departure of Mr. Lai An. Colodny Decl., Ex. H (Wang Dep. at 46:5-10). Wang appointed herself the manager of the Restaurant, informed Cheng that she was going to be the manager, and Cheng approved of Wang's appointment acting as manager. Colodny Decl., Ex. H (Wang Dep. at 46:18-48:4).

29. After Wang became a manager in January 2008, she remained a manager until June 1, 2009. Colodny Decl., Ex. H (Wang Dep. at 48:5-8).

30. Defendant Wang had the power to act on behalf of Cheng and Perfect Team, including but not limited to hiring and firing workers, setting and/or changing wages, distributing wages, setting and/or changing work schedules, directing and assigning types of work, and maintaining employment records. Colodny Decl., Ex. F (Cheng May 2011 Translations Supp. Resp. to Interrog. No. 6; Colodny Decl., Ex. F (Perfect Team May 2011 Translations of Supp Resp. to Interrog. No. 5).

31. While Perfect Team operated Guang Zhou Restaurant, Wang was also responsible for:

    a. establishing Perfect Team's compensation policies, rates and procedures, including tip practices (Colodny Decl., Ex. F (Perfect Team May 2011 Translations of Supp. Resp. to Interrog. No. 7));

    b. payment of compensation to employees, including tips (Colodny Decl., Ex. F (Perfect Team May 2011 Translations of Supp. Resp. to Interrog. No. 8)); and

    c. establishing and maintaining Perfect Team's timekeeping, payroll, bookkeeping and accounting practices (Colodny Decl., Ex. F (Perfect Team May 2011 Translations of Supp. Resp. to Interrog. No. 10); Colodny Decl., Ex. I (Cheng Dep. at 92:10-12 ("it was my wife who is in charge of the books and records")).

32. Wang hired numerous workers prior to June 1, 2009, including Plaintiff Gao, Jiang Shu Fa, Cheuk Ping Chen (a/k/a Chen Zhou Ping), De Run Wu, Shuang Shuang Zhang, An Long Chen, Wei Xiong Zhong. Colodny Decl., Ex. H (Wang Dep. at 54:23-57:20). Wang also hired the manager "Kevin." Colodny Decl., Ex. H (Wang Dep. at 58:4-6, 80:3-4).

33. During the period that Wang was a manager, she decided the amount of wages paid to employees. Colodny Decl., Ex. H (Wang Dep. at 66:22-67:13); Colodny Decl., Ex. I (Cheng Dep. at 102:20-23) (Q: Do you know anything about the wages that the Plaintiffs were paid at the restaurant? A: I don't know that. My wife handling that.").

34. Throughout the period Wang was a manager, Wang made decisions about what days and hours the employees worked. Colodny Decl., Ex. H (Wang Dep. at 61:10-23).

7

35. During the period Wang was a manager, she instructed workers at the Restaurant, including telling them to follow the instructions that had been provided by Mr. Lai after he was no longer involved in the Restaurant's operations. Colodny Decl., Ex. H (Wang Dep. at 59:7-24).

36. Prior to June 1, 2009, Wang promoted employees, including Xiao Hong Zheng, Wei Shun Wu, Lin Feng, from waiter to headwaiter. Colodny Decl., Ex. H (Wang Dep. at 62:24-66:11).

37. Prior to June 1, 2009 Wang disciplined employees, including Xiao Hong Zheng, Li Rong Gao, and Liang Zhiang. Colodny Decl., Ex. H (Wang Dep. at 74:21-75:12).

38. Wang worked at the Restaurant approximately seven days per week between June 2007 and June 2009. Colodny Decl., Ex. H (Wang Dep. at 44:12-20).

39. Defendant Ji Shiang, Inc. was organized as a corporation and existed under the laws of the State of New York. Colodny Decl., Ex. K (Certificate of Incorporation). Ji Shiang was incorporated on or about March 18, 2009. Ji Shiang Defs.' Answer to First Am. Compl., ECF No. 33 at ¶ 13.

40. Ji Shiang was an enterprise engaged in interstate commerce within the meaning of the FLSA in that it (i) had employees engaged in commerce or in the production of goods for commerce, or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person; and (ii) had an annual gross volume of sales of not less than $500,000. Colodny Decl., Ex. T (Pls.' Req. to Admit to Ji Shiang, Nos. 1, 2); Colodny Decl., Ex. U (Ji Shiang's Supp. Resp. to Req. to Admit Nos. 1, 2).

41. Ji Shiang was Plaintiff Gao's employer within the meaning of the FLSA during the time period after June 2009. Colodny Decl., Ex. T (Pls.' Req. to Admit to Ji Shiang, No. 3); Ex. U (Ji Shiang's Supp. Resp. to Req. to Admit No. 3).

42. Since Ji Shiang was incorporated, Lin has been its owner and sole shareholder. Colodny Decl., Ex. V (Ji Shiang Resp. to Interrog. No. 1).

43. Since Ji Shiang was incorporated, Feng Lin has served as the company's president and was the only corporate officer. Colodny Decl., Ex. V (Ji Shiang Resp. to Interrog. No. 1).

44. Feng Lin was Plaintiff Gao's employer within the meaning of the FLSA during the time period after June, 2009. Colodny Decl., Ex. S (Pls.' Req. to Admit to Lin, No. 3); Ex. U (Lin's Supp. Resp. to Req. to Admit No.3).

45. Defendant Wang, who is married to Cheng, is the sister of Defendant Lin's ex-wife. Colodny Dec., Ex. J (Lin Dep. 185:8-10).

### PERFECT TEAM DEFENDANTS DID NOT MAINTAIN FULL AND ACCURATE WAGE AND HOUR RECORDS

46. None of the Perfect Team Defendants maintained written records of the number of hours Ms. Gao worked each week. Colodny Decl., Ex. H (Wang Dep. at 80:10-18), Ex. A (Perfect Team Admis. No. 11), Ex. C (Cheng Admis. No. 9),; Ex. B (Wang Admis. No. 8).

47. None of the Perfect Team Defendants maintained written records of the total weekly overtime earnings of Ms. Gao. Colodny Decl., Ex. A (Perfect Team Admis. No. 13); Colodny Decl., Ex. C (Cheng Admis. No. 11); Colodny Decl., Ex. B (Wang Admis. No. 10).

48. None of the Perfect Team Defendants maintained written records of Ms. Gao's total weekly spread of hours earnings. Colodny Decl., Ex. A (Perfect Team Admis. No. 14); Colodny Decl., Ex. C (Cheng Admis. No. 12); Colodny Decl., Ex. B (Wang Admis. No. 11).

9

**PLAINTIFF'S WAGES AND HOURS FOR THE PERIOD UP TO JUNE 1, 2009**

49. Though no work schedules were produced by Perfect Team Defendants in discovery, Wang confirmed that Perfect Team maintained schedules indicating the times that employees had to work. Colodny Decl., Ex. H (Wang Dep. at 80:10-15).

50. Bates 00018 was one of the schedules used at the Restaurant prior to June 1, 2009, and Plaintiff Gao's schedule appeared in the row following her name. Colodny Decl., Ex. H (Wang Dep. at 82:4-83:9); Colodny Decl., Ex. N (Bates 00018 and duplicate copy); Gao Aff. at ¶¶ 4, 5; Gao Aff., Ex. A.

51. Bates 00019 was a schedule used at the Restaurant, and Ms. Gao's work schedule is reflected in the row directly under the row for "Leo." Colodny Decl., Ex. H (Wang Dep. at 82:17-83:9); Colodny Decl., Ex. N (Bates 00019); Gao Aff. at ¶¶ 4, 6; Gao Aff., Ex. B.

52. Bates 00020 was one of the schedules used at the Restaurant prior to June 1, 2009. Colodny Decl., Ex. H (Wang Dep. at 84:16-24); Colodny Decl., Ex. N (Bates 00020); Gao Aff. at ¶¶ 4, 7; Gao Aff., Ex. C.

53. Plaintiff Gao regularly worked more than 40 hours per week throughout the time she worked at Perfect Team. Colodny Decl., Ex. A (Perfect Team Admis. No. 10); Colodny Decl., Ex. C (Cheng Admis. No. 8); Colodny Decl., Ex. B (Wang Admis. No. 7); Gao Aff. at ¶ 3.

54. From April 29, 2008 to June 1, 2009, Plaintiff Gao regularly worked six days per week at the Restaurant. Colodny Decl., Ex. A (Perfect Team Admis. No. 9); Colodny Decl., Ex. C (Cheng Admis. No. 7); Colodny Decl., Ex. B (Wang Admis. No. 6); Gao Aff. at ¶ 3.

55. Of the six days Plaintiff worked at the Restaurant prior to June 2009, five days were generally over 10 hours per day, and one day was considered a "half" day. Gao Aff. at ¶¶ 3, 5-7; First Am. Compl. at ¶ 51, ECF No. 29; Perfect Team Defs.' Answer to First Am.

10

Comp. at ¶ 51, ECF No. 64; Colodny Decl., Ex. H (Wang Dep. at 194:12-14) ("Q: Isn't it true that Li Rong Gao normally worked five and a half days per week? A: About right."). Two of the five full days were on Saturday and Sunday. Gao Aff. at ¶ 3.

56. From April 28, 2008 to June 1, 2009, Ms. Gao's start and finish time varied depending on her assigned work shift, whether it was a holiday, and whether the Restaurant was hosting a banquet party. Gao. Aff. at ¶¶ 3-7. However, Ms. Gao normally worked approximately 61 hours per week, not including any sick or other unpaid time off, from approximately April 2008 to mid-July 2008. Gao Aff. at ¶¶ 3, 4. From approximately mid-July 2008 to June 1, 2009, Ms. Gao generally worked approximately 55 hours per week, not including any sick or other unpaid time off. Gao Aff. at ¶¶ 3, 4.

57. From April 2008 to June 1, 2009, depending on her assigned work shift, Ms. Gao received breaks from 30 minutes (for a meal break) to 3 hours. Gao Aff. at ¶¶ 4-8. If Ms. Gao's break was one hour or longer, she did not receive additional 30 minute meal breaks. Gao Aff. at ¶ 8.

58. From April 2008 to June 1, 2009, when Ms. Gao worked "half" days, she worked approximately four to five hours without a break. Gao Aff. at ¶¶ 3-7.

59. Cheng testified that he "would not have the knowledge to know when an employee starts working or when an employee finish[es] work[ing]." Colodny Decl., Ex. I (Cheng Dep. at 85:4-6). Specifically, Cheng did not know how many days per week that Plaintiff Gao worked at the restaurant prior to June 2009. Colodny Decl., Ex. I (Cheng Dep. at 82:6-21). Cheng also testified that he did not know when Gao began and finished her work day. Colodny Decl., Ex. I (Cheng Dep. at 83:14-16, 24-25; 84:2). Cheng also did not know whether

11

the Plaintiff worked more or less than ten hours per day, or how many hours Plaintiff worked at the Restaurant.  Colodny Decl., Ex. I (Cheng Dep. at 85:13-16, 103:2-14).

60. Lin also does not know what hours Ms. Gao worked during the 2008 to 2009 time period.  Colodny Decl., Ex. J (Lin Dep. at 86:6-24).

61. Perfect Team Defendants maintained payroll records indicating only how much Plaintiff Gao was paid on a bi-monthly basis, but not how much they paid her on an hourly basis.  Colodny Decl., Ex. L (Perfect Team Defs.' Payroll Records for Gao); Colodny Decl., Ex. H (Wang Dep. at 133:8-138:2).

62. During the period from April 29, 2008 to June 1, 2009, the Restaurant normally paid Gao wages at a rate of $400 per month.  First Am. Compl. at ¶ 41, ECF No. 29; Perfect Team Defs.' Answer to First Am. Comp. at ¶ 41, ECF No. 64; Colodny Decl., Ex. H (Wang Dep. at 136:17-138:2); Colodny Decl., Ex. L (Perfect Team payroll records for Li Rong Gao); Gao Aff. at ¶¶ 9-10.

63. During the period up to June 1, 2009, the Restaurant generally paid the Plaintiff her wages in cash, twice per month.  Gao Aff. at ¶ 9.  The Restaurant usually paid the Plaintiff $200 in the middle of each month and $200 at the end of each month.  Gao Aff. at ¶ 9.

64. Between April 29, 2008 and June 1, 2009, Ms. Gao took approximately six days off of unpaid sick or vacation time.  Colodny Decl., Ex. L (Perfect Team payroll records); Colodny Decl., Ex. H (Wang Dep. at 135:6-136:12, 139:17-143:11).

65. Perfect Team paid Plaintiff Gao below the minimum wage.  Colodny Decl., Ex. A (Perfect Team Admis. No. 15).

66. Given the number of hours that Ms. Gao worked each week, Ms. Gao's hourly rate during the period April 2008 to June 1, 2009 was the equivalent of less than $2.00 per hour. Colodny Decl. at ¶ 26 (explaining mathematical calculation).

67. Perfect Team did not pay Ms. Gao an overtime rate or any overtime compensation. Colodny Decl., Ex. A (Perfect Team Admis. No. 16); Gao Aff. at ¶¶ 9, 11.

68. Perfect Team did not pay Ms. Gao any compensation as spread of hours pay. Colodny Decl., Ex. A (Perfect Team Admis. No. 17); Gao Aff. at ¶ 11.

69. At no time prior to June 1, 2009 did Perfect Team or any of its agents tell Ms. Gao about the minimum wage law. Gao Aff. at ¶¶ 13, 14.

70. At no time prior to June 1, 2009 did Ms. Gao ever see a poster on the wall regarding the minimum wage or labor laws. Gao Aff. at ¶ 15.

71. At no time prior to June 1, 2009 did Perfect Team or any of its agents inform Ms. Gao that the Restaurant would be paying her less than the full minimum wage by applying a "tip credit" against her hourly wages. Gao Aff. at ¶¶ 13, 14.

### PLAINTIFF'S WAGES AND HOURS FOR THE PERIOD AUGUST 2010 TO FEBRUARY 2011

72. Ji Shiang paid Ms. Gao an hourly rate of $4.65 from August 2, 2010 to December 26, 2010, and $5.00 per hour from December 27, 2010 to February 13, 2011. Colodny Decl., Ex. M (Ji Shiang payroll records); Gao Aff. at ¶ 18; Gao Aff., Ex. E.

73. From August 2010 to February 2011, Ji Shiang's payroll records and Ms. Gao's paystubs reflect the number of hours she worked per week. Colodny Decl., Ex. M (payroll records). Gao Aff., Ex. E.

74.     At no time from August 2, 2010 to December 26, 2010 did any owners or managers of the Restaurant inform Ms. Gao that the Restaurant would be paying her less than the full minimum wage by applying a "tip credit" against her hourly wages.  Gao Aff. at ¶ 17.

75.     Ms. Gao was only told by Huang Shi, a manager of the Restaurant, that the minimum wage was $4.65 per hour.  Gao Aff. at ¶ 17.

76.     The Restaurant's payroll records did not explicitly state that it was taking a tip credit against the full minimum wage that Gao was entitled.   Colodny Decl., Ex. M (payroll records).

77.     Lin failed to provide clear testimony as to whether he told Ms. Gao about the minimum wage laws.  Colodny Decl., Ex. J (Lin. Dep. at 191:16-192:13) ("Q: Why do you say you guess you [told Li Rong Gao about the minimum wage]?  A: I don't remember.  It was so many years ago.  All I can think of is how can I make money and where can I find a job.")

78.     Lin claimed to have posted a labor law poster on a door inside the Restaurant sometime after June 3, 2009, but he did not know for sure if he was the one who posted it and could not remember when it was posted or where he obtained the poster.  Colodny Decl., Ex. J (Lin. Dep. at 199:6-201:6).

79.     Lin did not know what happened to the poster.  Colodny Decl., Ex. J (Lin. Dep. at 201:7-17)

80.     Ji Shiang Defendants never produced a labor law poster in this litigation in response to Plaintiffs' request for documents made pursuant to Rule 34.  Colodny Decl. at ¶ 26.

**PERFECT TEAM DEFENDANTS WILLFULLY VIOLATED THE LAW**

81.     Cheng testified he was aware of the existence of labor laws not later than 2007, at which time he claims a poster about labor laws, including the minimum wage and overtime, was

hung on the wall at the Restaurant. Colodny Decl., Ex. I (Cheng Dep. 118:25-122:25). Cheng testified that the posters remained on the wall during 2008 and 2009. Id.

82. Cheng testified that he was aware that the poster contained information about the minimum wage, including information about how much each worker should be paid per hour. Cheng was also aware that the poster said something about overtime. Colodny Decl., Ex. I (Cheng Dep. 121:8-122:25).

83. Shortly after the poster was allegedly posted, some employees at the Restaurant explained to Cheng that the overtime rate should be 1.5 times the regular rate of pay. Colodny Decl., Ex. I (Cheng Dep. 122:12-20).

84. The Perfect Team Defendants never produced a copy of the poster during this litigation despite the fact that the poster was responsive to Plaintiff's requests for documents made pursuant to Rule 34. Colodny Decl. at ¶ 25.

85. Cheng testified that Wang was the one who obtained the poster and was responsible for replacing it. Colodny Decl., Ex. I (Cheng Dep. 120:16-19). Wang testified that she was the person who put the posters on the wall. Wang Decl. at ¶ 4, ECF No. 96;

86. Defendant Cheng testified that he believed the Restaurant was complying with minimum wage and overtime laws throughout the period of June 2007 to June 2009 because the Restaurant posted a sign about minimum wage on the wall. Colodny Decl., Ex. I (Cheng Dep. 128:4-8). The Restaurant did not take any other steps to ensure that the Restaurant complied with minimum wage, overtime or any other labor laws. Colodny Decl., Ex. I (Cheng Dep. 128:4 – 128:8) ("Q: What did you think the restaurant was doing to comply with the labor laws? A: We had posted those papers on the wall. Q: Anything else? A: Other than that, I don't know.").

87. Cheng did nothing to determine whether the Restaurant was paying the waitstaff overtime pay. Colodny Decl., Ex. I (Cheng Dep. 129:12 – 129:15).

88. According to Wang, the posting said the minimum wage was $7.10. Colodny Decl., Ex. H ("Wang Dep. 171:8-11).

89. Wang testified that other than placing the poster on the wall of the Restaurant, she did not do anything to ensure that the Restaurant was paying its workers the legal wages. Colodny Decl., Ex. H (Wang Dep. 177:12-179:7).

90. Wang never calculated how much the Restaurant paid per hour to Guang Zhou Restaurant's waitstaff, and during her deposition could not identify any other person who made such a calculation. Colodny Decl., Ex. H (Wang Dep. 175:6-14, 177:16-178:2). When asked about whether she believed that the Restaurant was paying at least the minimum wage to the waiters in 2008 and 2009, Wang testified that she had trouble recalling. Colodny Decl., Ex. H (Wang Dep. 175:24-177:11).

91. When asked during her deposition whether she had heard of a legal requirement to pay employees a higher wage when employees work more than forty hours per week, or whether she had heard of a legal requirement called overtime, Ms. Wang testified that she only knew she had to post information about minimum wage and that she did that. Colodny Decl., Ex. H (Wang Dep. 178:19-23).

92. Perfect Team, Cheng and Wang refused to answer Plaintiffs' interrogatories asking them to describe all efforts made to determine and comply with the requirements of the Fair Labor Standards Act and New York Labor Law. Colodny Decl., Ex. F (Perfect Team's May 2011 Translations of Supp. Resp. to Interrog. No. 12); Colodny Decl., Ex. F (Cheng's May 2011

16

Translations of Supp. Resp. to Interrog. No. 13); Colodny Decl., Ex. F (Chun Kit Wang's May 2011 Translations of Supp. Resp. to Interrog. No. 13).

93. As part of the Defendants' supplemental responses to discovery, Cheng and Wang provided affidavits stating that Perfect Team's and Wang's efforts to comply with federal and state labor law "include, but is not limited to: posting minimum wage posters; paying for workers' compensation, disability and unemployment insurance; posting job safety notices; and not discriminating against employees." Colodny Decl., Ex. F (Cheng Aff. at ¶ 6 (May 27, 2011)); Colodny Decl., Ex. F (Wang Aff. at ¶ 6 (May 27, 2011)).

Dated: April 30, 2014

                                           Respectfully Submitted,

                                           /s/ David A. Colodny

                                           David A. Colodny
                                           Amy Tai
                                           URBAN JUSTICE CENTER
                                           123 William St., 16th Floor
                                           New York, NY 10038
                                           Tel: (646) 602-5600
                                           Fax: (212) 533-4598

                                           Edward Tuddenham
                                           228 W. 137th St.
                                           New York, N.Y. 10030
                                           Tel: (212) 234-5953

                                           *Attorneys for Plaintiff Li Rong Gao*